The plaintiff was the wife of George Ronald, and the beneficiary named in the certificate or policy of insurance upon his life in the sum of $5,000, issued to him by the defendant August 23, 1883. She seeks to recover that sum in this action. The defense is that the policy was forfeited by the non-payment of ten dollars, annual dues, which by the terms of the policy became due August 21, 1884. The plaintiff claims that this cause of forfeiture was waived by the defendant, and the question presented upon this appeal is whether the facts hereinafter stated constituted such waiver, or were sufficient to entitle the plaintiff to go to the jury upon the question.
George Ronald died September 26, 1884, of fatty degeneration of the heart. The day before he died, Mathew Hardenbergh, his employer, acting for him, paid the defendant the ten dollars, and the defendant thereupon gave him a receipt therefor, the material parts of which are:
"NEW YORK, Sept. 26, 1884.
"Received for the annual dues, ten dollars, according to the terms and conditions of certificate No. 14744, on the life of George Ronald, from the 21st day of August, 1884, to the 21st day of August, 1885." "The time having expired for the payment of the annual dues, and payment being tendered after the same was due, this receipt is given by the association, and accepted by the member upon the following conditions and not otherwise: That said member is now living, and of temperate habits, and in as good health as when originally received as a member of this association under said certificate, otherwise said payment and this receipt and said certificate shall be null and void." The constitution of defendant, which formed part of the contract of insurance, provided: "If any of the conditions or provisions of the certificate of membership *Page 382 
or of the constitution and by-laws are violated by the member, then, and in every such case such membership shall at once cease and determine, and the certificate shall be null and void and all payments made thereof forfeited to the association."
"But the executive committee shall have power to reinstate a delinquent member, at any time within one year, for good cause shown and upon satisfactory evidence of good health, and upon payment of all delinquent dues and assessments." The condition respecting the health of the insured expressed in the receipt was within the terms of the contract. The parties had agreed that Ronald's membership should cease upon non-payment of dues. It was competent for them so to agree. (Atty.-Gen. v. North Am. LifeIns. Co., 82 N.Y. 172-190.) But they had also agreed that Ronald might be reinstated in membership upon certain conditions; one was payment of delinquent dues, and another was upon satisfactory evidence of good health. The first condition was met; the second remained to be met. When Hardenbergh paid the dues, the defendant's representative asked him if Ronald was in his usual health; Hardenbergh replied that he knew nothing to the contrary. He testified: "I explained to him about his foot; something about a swollen foot, I remember I said something about his drinking, that he might have got his foot hurt on his annual little spree that he generally took. I was under the impression that that was the case."
It appeared that Ronald had been ill about ten days; it subsequently appeared that his mortal illness was not the result of drink. He was at his boarding-house and had some money to his credit with his employers and at his request they paid the defendant. The same evening they removed him to the hospital where he died the next forenoon. His death was unexpected to them and the cause of it was not known until the post-mortem examination disclosed it to be fatty degeneration of the heart.
It is obvious upon this state of facts that no "satisfactory evidence of good health" — the second condition of Ronald's *Page 383 
reinstatement to membership — could be furnished. Possibly he was dying when the defendant received the delinquent dues.
The plaintiff further insists that the defendant by its subsequent action in respect to the proofs of death treated the policy as valid and thereby waived the forfeiture. Two days after Ronald's death Mr. Hardenbergh informed the defendant of the fact, but stated that he could not tell the cause of death, except that he was taken home the week before with a swollen foot, and had been taken to the hospital the night before he died, and that he had been upon a spree. The defendant gave Hardenbergh blanks upon which to make proofs of death. Mr. Hardenbergh subsequently had these blanks filled out, a representative of the defendant giving instructions as to the manner, and they were sent to Scotland, where the plaintiff resided, and were executed, returned and delivered to the representative of the defendant, who said they would be laid before the proper board. These proofs stated the true cause of death and that it was preceded by an illness of about two weeks. Subsequently Mr. Hardenbergh, who had been authorized to act for the plaintiff, called upon defendant's representative, who then asked him to furnish the certificate of the clergyman who officiated at Ronald's burial, and the representative gave him blanks for the purpose. This certificate Hardenbergh procured and delivered to the same representative, who thereupon said he would lay it before the board, and that when the president, who was then absent, returned, the board would meet and the claim be passed and probably would be paid in March following. Hardenbergh then stated more fully the facts relating to Ronald's death. Subsequently Hardenbergh again called upon defendant's representative, and then was told that the plaintiff had no claim; that the policy had lapsed because of non-payment of dues. Subsequently the defendant tendered Hardenbergh ten dollars and the interest from September 26, 1884.
We do not think these acts of the defendant constituted a waiver. A waiver of the forfeiture of a policy, in the absence *Page 384 
of any agreement to that effect, results from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some expense or trouble. (Titus v. Glens Falis Ins. Co., 81 N.Y. 419.) In the absence of an estoppel, knowledge of the facts and an intention to waive must exist — provable, of course, by the circumstances. (Robertson v. Metropolitan Life Ins. Co., 88 N.Y. 541; Weed
v. London L. Fire Ins. Co., 116 N.Y. 106; Roby v. Am.Central Ins. Co., 120 N.Y. 510.)
The waiver of the forfeiture was conditioned upon "satisfactory evidence of good health" of the insured when the ten dollars were paid.
When the defendant received that payment it also received some vague information from a layman who did not profess to have any exact information, to the effect that the insured had a swollen foot and had been on his "annual spree." If the insured was no worse than this communication imported, the defendant might be willing to reinstate him, and to waive the forfeiture. But as he suddenly died the next morning, death might have resulted from illness ante-dating the payment or from some acute attack subsequent to it and quite apart from anything which had been suggested to defendant. It was a condition precedent to the maturity of the claim of the plaintiff that the proofs of death specified in the contract should be furnished. The acts of the defendant in furnishing blanks in the first instance, and giving instructions as to the manner of filling them, were acts of courtesy.
The clergyman's certificate was a proper part of the completed proofs. All the papers constituting the proofs of death and its cause were part of the evidence proper for the defendant to ask and for the plaintiff to give in order to impart to the defendant that full knowledge of the facts which, under the circumstances, was material to the reserved question of Ronald's reinstatement as a member, and also a condition precedent to any further acts to be relied upon as a waiver of forfeiture. *Page 385 
The promise of payment made by defendant's representative was conditioned upon the approval of the board. As the matters relied upon to constitute a waiver were properly required by the defendant to enable it to ascertain the facts and decide as to its position, we think the court properly decided that there neither was a waiver nor any evidence tending to prove it that should have been submitted to the jury.
The plaintiff now raises the point, not presented at the trial, that the defendant could not forfeit Ronald's policy because no notice of the annual dues had been given him in advance of the date when the same became due pursuant to Ch. 341, Laws 1876, amended by Ch. 321, Laws 1877. The defendant is a mutual benefit association doing business upon the co-operative assessment plan. It was originally incorporated under Ch. 267, Laws of 1875, and reincorporated December 26, 1883, under Ch. 175, Laws 1883. Companies organized under the last mentioned act, and doing business upon the plan therein described and characterized as the co-operative or assessment plan, are by section five declared to be subject only to the provisions of that act; thus it would seem they are not subject to the provisions of the act requiring previous notice of the due date of annual dues. But as the case presents no exception upon this point and only presents such testimony as is material to the exceptions, the question is not properly before us.
The judgment should be affirmed.
All concur.
Judgment affirmed. *Page 386