### PRIMEAU v. NATIONAL LIFE ASS'N.

(Supreme Court, General Term, Fourth Department. May 18, 1894.)

INSURANCE—PAYMENT OF PREMIUMS—REMITTANCES BY MAIL.
> Where an insurance company authorizes payment of premiums by mail, the payment is made when the letter containing the remittance is deposited in the post office.

Appeal from special term, Jefferson county.

Action by John J. B. Primeau against the National Life Association on a policy of insurance. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

> By the judgment it was determined that a policy of insurance issued by the defendant on the 15th day of June, 1892, upon the life of the plaintiff, is a valid and subsisting policy, and it was decreed to be in full force and effect upon payment by the plaintiff of the premiums past due, with interest from the time the same became payable; and it was adjudged that defendant accept such payment, and give notice to plaintiff of the amounts of such premiums, and of the times when they become due and payable.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

W. A. Sutherland, for appellant.
Henry Purcell, for respondent.

MERWIN, J. The appeal in this case is heard upon the judgment roll. In such a case it is incumbent on the appellant to show that the trial court could not, in any view of the facts found, properly order a judgment for plaintiff. Insurance Co. v. Barnard, 96 N. Y. 525. The defendant is a foreign corporation, located at Hartford, Conn., and is doing a life insurance business in the state of New York upon the co-operative or assessment plan. On the 10th June, 1892, the defendant duly issued and delivered to plaintiff a policy of insurance upon his life in the sum of $2,000. The beneficiary was Kate A. Primeau, the wife of plaintiff. This policy, among other things, provided that the premium thereon should be paid at

Hartford, Conn., on the first week days of the months of February, April, June, August, October, and December in each year, and that a failure to make any payments of premiums on or before the day they were due would work a forfeiture of the policy. The plaintiff was a resident of the city of Watertown, in this state, and he regularly paid all assessments or premiums made or called for by defendant to and including the one due December 1, 1892. Another assessment or premium became due February 1, 1893. Whether the plaintiff made default in the payment of this is the main question in this case. On the 2d day of January, 1893, the defendant sent by mail to the plaintiff a notice, signed by its secretary, stating as follows:

"The bimonthly premium on your policy No. 1,652, of $8.50, will be due and payable at this office on or before the 1st day of February, 1893. Agents are not authorized to collect the above amounts. Make all checks and post-office orders payable to the National Life Association. Please inclose this notice with your remittance, and it will be stamped 'Paid,' and returned to you."

On the same page, below this notice, there was printed matter, headed "Important," and signed by the general manager of the defendant, as follows:

"Notice. This premium is payable at Hartford, Conn., on or before February 1st. While most of our members make their payments promptly, there are some who are always late, and who seem to think that their payments ought to be accepted by the company whenever they are ready to pay. We would call especial attention to the fact that the last day of payment named in this notice is the same as the last day of grace on a note, and that, if payment is not made on or before the day due, that the policy is lapsed, and can only be reinstated at the option of the association, and, if reinstated, parties will be required to sign a health certificate.   *   *   *   We inclose you an envelope directed to the company, which please use in sending your remittance."

Notices identical with this, except as to the dates and amounts, had been sent by defendant to plaintiff by mail prior to each of the prior payments. The payments were all made by checks drawn to the order of defendant upon a Watertown bank, and each was sent to defendant by mail in the envelope mentioned in the notice. The notice for the payment due October 1, 1892, was sent to plaintiff on September 10, 1892, and was subsequently stamped "Paid" October 1, 1892. The notice for the payment due December 1, 1892, was sent November 10, 1892, and was stamped "Paid" December 1, 1892. The payments of October 1st and December 1st were made by depositing the check and envelope in a street letter box of the post office of the city of Watertown, which is located about 20 rods from the post office, on the day next preceding the said 1st October and 1st December, respectively, and the letters so deposited left Watertown by the evening mail, and were delivered to the defendant at its home office on the days following the mailing of the same. On the 31st January, 1893, the plaintiff was sick, and unable to attend to any business. Thereupon his wife, the beneficiary in the policy, for the purpose of paying the amount, made her check for the proper amount on a Watertown bank to the order of defendant, and placed it, with the notice, in the envelope sent by the defendant for that purpose, properly sealed, and postage prepaid, and deposited it in the same

letter box where she had previously deposited like remittances to the defendant. This was done at 5 o'clock in the afternoon. There was a regular collection of mail from this letter box at 4 o'clock in the afternoon, and collections were also made from it by the letter carriers of the post office upon their return trips from distributing a mail which at that time arrived, or was due to arrive, at 4 o'clock, and these collections, when the 4 o'clock mail arrived on time, were made in time for the outgoing mail that evening for New York and Hartford. This 4 o'clock mail was late on the afternoon of January 31st, so that the carriers who made collections on their return from distributing it did not take up the letter in question in time for the outgoing mail that evening, which left at 6 o'clock. As a result, the letter to defendant left Watertown on the morning of February 1st, reached Hartford the evening of that day, and was delivered to defendant the morning of February 2d. On that day the defendant notified plaintiff by letter that the premium was not received on the 1st day of February, and that, in order for the plaintiff to be reinstated, it would be necessary for him to sign a certificate of good health in a certain form. To this the plaintiff, on the 3d February, caused a reply to be sent that he could not then give such a certificate. The defendant kept the check until February 6th, when it was returned to plaintiff's wife, with a letter acknowledging the receipt of the letter of 3d February, and saying that, as the husband cannot sign the health certificate, they return the check, and have marked the policy "Lapsed" on their books. On the 8th February the plaintiff made an offer to defendant of the money for the premium, but the defendant refused to take it, on the ground that the policy had previously lapsed, and been canceled. The check sent by plaintiff's wife on 31st January was a good one, and no objection was made to accepting it, except that it was not received by defendant on or before the 1st day of February. The defendant, in all the notices to plaintiff, authorized and empowered him to make payments by checks upon bank in Watertown. On the day in question the plaintiff's wife did not know that the 4 o'clock mail was late, or that the carriers went out late from the post office. She was a milliner, engaged in business at a place near the letter box referred to, and had often observed the mail carriers, on their return trip from distributing the 4 o'clock mail, collecting mail from that box after 5 o'clock and before 6 o'clock, and when she deposited in that box the letter on the 31st January she understood and believed that the same was deposited in time to leave Watertown by the outgoing mail at 6 o'clock. The irregularities in the time of the collection of mail from the box in question after the incoming of the 4 o'clock mail about the time in question were due largely to the weather, which delayed the trains, and the plaintiff and his wife knew or had reason to know of such delays of the trains. In the month of January these irregularities were such that upon a majority of the days of that month the collections by the returning carriers were too late for the evening mail. These are the main facts, as appearing from the findings, on the subject of the disputed payment. It was held by the special term that the mailing of the check by the plaintiff's wife on

January 31, 1893, was such an act on the part of plaintiff and his wife as to prevent the defendant from declaring the policy lapsed, and that the policy did not lapse and become null and void on February 1, 1893.

It is to be observed that the defendant authorized the plaintiff to make payments in checks upon a Watertown bank. It is also very clear that the defendant authorized, and in substance requested, the plaintiff to make the payment in question, as well as previous payments, by mail. It sent each time to the plaintiff an envelope, directed to the company, and requested him to use it in sending his remittance; and the payments had previously been so made. We have, then, in effect, a case where, by the authority of the creditor, a payment is sent by mail. In such a case, after deposit in the post office, it is at the risk of the creditor, and the payment is deemed to have been made at the time of the deposit. 2 Greenl. Ev. § 525; 2 Pars. Cont. 620; 2 Chit. Cont. (11th Ed.) 1106; 2 May, Ins. § 340; Morgan v. Richardson, 13 Allen, 410, 411; Buell v. Chapin, 99 Mass. 596; Colvin v. Association, 66 Hun, 543, 21 N. Y. Supp. 734. In Palmer v. Insurance Co., 84 N. Y. 71, it was held that, if money was sent to the defendant by mail, according to its request, it was at the defendant's risk, and the same thing was held as to a check in Kenyon v. Association, 122 N. Y. 247, 25 N. E. 299. If the payment in question took effect at the time of deposit, then there was no default, and the defendant would not be in a position to claim a forfeiture. It had a right to receive it, or agree to receive it, at some other place than its home office, or out of the state. Hastings v. Insurance Co., 138 N. Y. 474, 479, 34 N. E. 289. Authority or request to send by mail was a waiver of the provisions for payment at the home office. But it is argued that the letter should have been mailed in time, so that by the regular course of mail it would have reached the defendant on the 1st day of February. This depends on whether the authority from defendant to the plaintiff to make payment by mail was restricted in that way. There was no such restriction, in terms at least, in the notice the defendant sent to the plaintiff. That stated that the premium was due and payable at the home office, or at Hartford, on or before the 1st day of February. It also, in effect, stated that the plaintiff might make payment by mail in Watertown checks. It did not state that, if payment was made in that way, the mailing must be made long enough before the 1st of February to enable the letter to reach the defendant by the 1st. A number of cases are cited as to the rule in case of mailing notice of protest to a party living at the same place with the party giving the notice. Those cases hardly apply here. The case of Hodgkins v. Insurance Co., 34 Barb. 213, seems to have been reversed in the court of appeals. See 41 N. Y. 620. In the answer in the present case it is alleged that the only objection the defendant made to accepting the check was that it was not received by the defendant on or before the 1st day of February. If the defendant, although authorizing or requesting payment by mail, still designed to claim forfeiture if the letter did not get to the home office by the 1st of February, should it not have so stated in its notice to the

plaintiff? A restriction of that kind, and with that effect, should not be inferred from doubtful language. A forfeiture will not be permitted upon equivocal or doubtful clauses or words contained in the contract of the party himself who claims the forfeiture. Baley v. Insurance Co., 80 N. Y. 23; Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309. In view of the authority to make payment by mail in checks, and the failure to give any specific restriction as to the time of mailing, and in view of the circumstances under which the mailing was in fact made, it should not, I think, be held that the defendant had a right to claim a forfeiture.

It is further claimed by the defendant that the plaintiff cannot maintain this action, because he has made no tender of premiums coming due since February 1, 1893. The defendant informed the plaintiff that his policy had lapsed and been canceled, made no further calls upon him, and substantially admits that, if money for subsequent premiums had been tendered, it would not have received it. We think that a tender for subsequent premiums was not necessary. Meyer v. Insurance Co., 73 N. Y. 516, 528, and cases cited; 2 May, Ins. § 358. No fault is found with the form of the judgment. These considerations lead to an affirmance. Judgment affirmed, with costs. All concur.