## MUTUAL RESERVE FUND LIFE ASS'N v. TUCHFELD.

(Circuit Court of Appeals, Sixth Circuit. March 23, 1908.)

No. 1,731.

1. WRIT OF ERROR—RECORD—JURISDICTION—REVIEW.

Where the state court in which an action against an insurance company was brought would have had jurisdiction under the service made, if defendant was an insurance company not on the assessment plan, and the record on a writ of error did not show that it was made to appear on the hearing of a plea of abatement raising an objection to the jurisdiction that the insurance company did business on the assessment plan, error in overruling the plea was not shown.

2. INSURANCE—FOREIGN INSURANCE COMPANY—SERVICE ON INSURANCE COMMISSIONER—ACCEPTANCE OF SERVICE.

Under Acts Tennessee 1895, p. 322, c. 160, providing that any process issued by any court of record in the state against a foreign insurance company may be served on the insurance commissioner, such commissioner need not require that the process be served on him, but he may accept service.

3. SAME—POWER TO ACCEPT SERVICE—REVOCATION—WITHDRAWAL FROM STATE.

Where a foreign insurance company, doing business in Tennessee, filed a power of attorney authorizing the insurance commissioner to accept service for it, under Acts Tennessee 1895, p. 322, c. 160, requiring the power to authorize such service, so long as any liability remains outstanding against the insurance company within the state, the company's withdrawal from the state did not revoke the insurance company's power to bind it by an acceptance of service in an action on an outstanding policy within the state.

4. SAME—PREMIUMS.

Though a policy provides that premiums shall be paid at the insurer's home office by a certain time, if, after issuance of the policy, the insurer authorizes or acquiesces in the sending of the premiums by mail, a deposit thereof in the mail, in time to reach the home office by the time the premium is due, will prevent forfeiture, though the premium does not in fact reach such office until after the due date.

159 F.—53

5. SAME—FAILURE TO PAY PREMIUMS AT MATURITY—FORFEITURE—WAIVER.

Where a policy provided that premiums should be paid at the insurer's home office, and if any payment was not made on or before the date of maturity the policy should expire and become void, and all payments forfeited, if insured failed to mail a draft for the premium until after the date on which it fell due, the policy was forfeited in accordance with its terms, but if, notwithstanding such forfeiture, the insurer on receipt of the draft applied the proceeds to the premium due, without more, such action would constitute a waiver of the forfeiture and reinstatement of the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1041–1045.]

6. SAME—CONDITIONAL RECEIPT.

Where a draft to pay a premium on a policy was not mailed until after the premium matured, insurer, not being bound to accept the draft and waive the forfeiture was entitled to impose such terms on its consent to waive the forfeiture as it might dictate, and if it accepted the premium on condition that insured was then in good health. etc., a breach of such conditions, nothing else appearing, would constitute a defense to an action on the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1041–1045.]

7. SAME—WAIVER—SUBSEQUENT PREMIUMS—ACCEPTANCE.

Where a forfeiture of a policy was incurred by nonpayment of premium at maturity, which forfeiture the insured waived, on conditions that the insured was then in good health, etc., which were broken when made, the conditions were not waived by the insurer's subsequent acceptance of premiums under the policy, unless such acceptance was with notice of the breach of the conditions.

8. SAME—INSTRUCTIONS.

Insured having failed to pay a premium in time, the premium was accepted subject to the condition that insured was then alive, of temperate habits, and in good health. etc., which condition insured was not then able to fulfill. Held, that an instruction that the insurer's acceptance of subsequent premiums, notwithstanding the conditional acceptance of the premium paid after due estopped insurer from saying that the policy had lapsed, was erroneous.

9. SAME—PENALTY—DEMAND.

Acts Tennessee 1901, p. 248, c. 141, provides that an insurance company refusing to pay a loss within 60 days after a demand by the policy holder shall be liable for a penalty not exceeding 25 per cent. of the liability, provided it shall appear that the refusal to pay was not in good faith, and inflicted additional expense on the plaintiff. Held, that no penalty could be recovered under such section in the absence of a formal demand for payment of the loss under the policy, in addition to the commencement of a suit thereon.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

C. G. Bond and T. B. Turley, for plaintiff in error.

W. H. Biggs, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This is an action by the defendant in error against the plaintiff in error on a life insurance policy issued by the latter upon the life of the former's intestate. The policy was issued September 9, 1890, and was for the sum of $10,000, but was

reduced September 9, 1901, to the sum of $5,000. The insured died on October 14, 1905, and the action was brought September 11, 1906. It was brought in the Circuit Court of Madison county, Tenn., and thence removed to the lower court, where judgment was recovered not only for the face of the policy and interest thereon, but for 20 per cent. penalty under the act of April, 1901 (Acts 1901, p. 141, c. 141), the whole amount recovered being the sum of $6,354.15.

Several errors are assigned for reversal. One is that the court erred in overruling the defendant's plea in abatement to its jurisdiction. The claim was that it was without jurisdiction because the state court did not have jurisdiction thereof. The defendant entered the state of Tennessee prior to or in the year 1889, and continued to do business therein until November 15, 1901, when it withdrew therefrom. At the time the action was brought, and for several years prior thereto it had no voluntary agent in the state. In 1887 and in 1892 and again on May 11, 1897, it filed a written instrument in the office of the Insurance Commissioner at Nashville in Davidson county, constituting, in case of the 1887 writing, the Secretary of State, and in case of the other two, the Insurance Commissioner, its agent for service of process, and containing an agreement that process might be served on him so long as any liability remained outstanding against it in the state. The first writing was filed under the act of 1875 which related to insurance companies generally. Acts 1875, p. 79, c. 66.

Our attention has been called to no legislation under which it can be said that the writing of 1892 was filed. It could not have been under the act of 1875 as that provided for constituting the Secretary of State as agent for service of process. Prior to the filing of the last writing, two acts were passed, each of which provided for constituting the Insurance Commissioner as such agent. The act of 1895 related to insurance companies other than those engaged in life and casualty insurance on the assessment plan. Acts 1895, p. 322, c. 160. The act of 1897, which took effect April 3, 1897, related to insurance companies engaged in such insurance on the assessment plan. Acts 1897, p. 300, c. 127. The act then under which the last writing may be said to have been filed depends on whether it did business on the assessment plan or not. The execution thereof was required as a condition of its continuing to do business in the state. In the act of 1895 there was a provision in these words:

"Any process issued by any courts of record in this state and served upon such commissioner (Insurance Commissioner) by the proper officer of the county in which the said commissioner may have his office, shall be deemed a sufficient process on said company."

The act of 1897 contains no such provision. The process by which the defendant was attempted to be brought before the state court was a summons directed to said Davidson county in which the Insurance Commissioner had his office and there accepted by him, and also by the Secretary of State. It is claimed that the acceptance by the Secretary of State was of no validity as the act of 1875 had been repealed entirely, if not by the act of 1895, by it and that of 1897 together. We do not find it necessary to determine this question.

The principal ground upon which it is urged here that the state court did not acquire jurisdiction by the acceptance of said summons by the Insurance Commissioner is that said process could not legally be directed to Davidson county, a county other than that in which the action was brought. It is claimed that it is a cardinal principle that the process of a court cannot extend beyond the territorial jurisdiction thereof, unless authorized by statute—that the plaintiff in error did business on the assessment plan, and hence was covered by the act of 1897 and not by that of 1895—and that as the act of 1897 did not contain any such provision as that above quoted there was no statute of Tennessee authorizing the issuance of process against it from the Madison circuit court directed to Davidson county. Whether, if that statutory provision has no application to this case, jurisdiction of the action on the part of the state court can be worked out, we do not find it necessary to determine. As bearing thereon these cases have been cited, to wit: People v. Justices of City Court, 25 Abb. N. C. (N.Y.) 403, 11 N. Y. Supp. 773; Fink v. Lancaster Ins. Co., 60 Mo. App. 673.

It is sufficient to say that, so far as the record before us goes, it was not made to appear on the hearing of the plea in abatement that the defendant was a life insurance company on the assessment plan. The sole allegation concerning its character in the plea was that it was a New York corporation. The declaration went further than this, and alleged that it was a New York insurance corporation. The plea was heard by the court, and it made findings of fact and law. The finding as to the character of the defendant was simply that it was a New York insurance corporation. The evidence heard upon the plea was not preserved by a bill of exceptions, and it cannot, therefore, be said that it established that defendant was a life insurance company on the assessment plan. Indeed, inasmuch as there was no finding as to the plan on which the defendant did business, it is not likely that any evidence was introduced bearing on this subject. As then, by concession, the state court would have had jurisdiction if defendant was an insurance company not on the assessment plan, and the record does not show that it was made to appear on the hearing of the plea of abatement that it was such on that plan, it cannot be said that the lower court was in error in not sustaining the plea on this ground. In the case of Patton v. Continental Casualty Co. (Tenn.) 104 S. W. 305, jurisdiction of the circuit court of Washington county, Tenn., of a suit against a foreign accident insurance company was upheld upon summons issued therefrom to Davidson county, and there accepted by the Insurance Commissioner.

It is urged, further, that said statutory provision authorized the service of process issued thereunder, and not the acceptance of service thereof, and as the summons here was not served, but service thereof was accepted, the state court was without jurisdiction. The writing itself authorized the Insurance Commissioner, not simply to receive service, but to accept it. This, however, is not important. In the Patton Case, Judge Neil said:

"In the present case, the service of process was acknowledged by the Insurance Commissioner, and, on the principles already stated, we are of the opinion that this service was properly made, and the company was brought before the court."

Neither of those two grounds of lack of jurisdiction in the state court seems to have been relied on in the lower court. The theory of the plea seems to have been that lack thereof was due to the fact that defendant had no voluntary agent in the state, and the officers who had accepted service were without authority so to do by reason of defendant's withdrawal from the state in 1901. This position is feebly urged here and these cases, to wit, Swann v. Mutual R. F. L. Association (C. C.) 100 Fed. 922, Friedman v. Insurance Co. (C. C.) 101 Fed. 535, are cited in support of it. But these cases were overthrown by that of Mutual R. F. L. Association v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987. To the same effect are Youmans v. Minn. Life Insurance Co. (C. C.) 67 Fed. 282; Collier v. Mutual R. F. L. Association (C. C.) 119 Fed. 617; Magoffin v. Mutual R. F. L. Association, 87 Minn. 260, 91 N. W. 1115, 94 Am. St. Rep. 699; Biggs v. Mutual R. F. L. Association, 128 N. C. 5, 37 S. E. 955; Moore v. Mutual R. F. L. Association, 129 N. C. 31, 39 S. E. 637; Woodward v. Mutual R. F. L. Association, 178 N. Y. 485, 71 N. E. 10, 102 Am. St. Rep. 519. This assignment of error, therefore, is not well taken.

The other assignments of error, with one exception, relate to certain portions of the charge to the jury, and the refusal of certain requests made by defendant. Before referring to any of these assignments, a preliminary statement of certain facts should be made. The policy called for the payment of bimonthly mortuary premiums. They were payable within 30 days from the first week day of the months of December, February, April, June, August, and October. It was provided that, if any of said payments were not made on or before the date when due at the home office of the association in the city of New York, the policy should expire and become null and void, and all payments thereon should be forfeited to the association. In the course of time the mortuary premium due within 30 days after the first week day of December, 1904—i. e., by December 31, 1904—for $24.45, known as "Call 137," had to be met. According to evidence introduced by plaintiff, on December 24, 1904, the insured at Jackson, Tenn., where he lived, purchased a New York draft for the sum of $24.45 of that date, and deposited in the mail an envelope containing it addressed to defendant at its home office. For eight or ten years previous thereto the insured had been making payments of the mortuary premiums in this way and in each call therefor this instruction was contained:

"Remittances must be by valid draft, check, post office or express money order, and when made by mail are at the sender's risk. Any credit made or receipt given is conditioned on payment of such draft, check, post office or express money order on presentation, and, if not so paid, such receipt shall be null and void."

The draft was received by defendant, but, there was evidence tending to show not until January 16, 1905, and then in an envelope postmarked at Jackson, Tenn., January 12, 1905, which envelope was put

in evidence. The draft so received bore date December 24, 1904. There was evidence tending to show that the insured, not hearing from the draft in due course, shortly afterwards wrote a letter of inquiry in regard to it. There was evidence tending to show that on January 17, 1905, defendant deposited in the mail at New York an envelope addressed to the insured, containing a red slip on which it acknowledged receipt of said sum of money from the insured, and stated :.,

"The above payment is offered and the same received by the company, subject to the conditions on the back hereof, which are hereby made a part of this receipt."

The conditions on the back thereof were as follows:

"The conditions on which the within payment (for which this receipt is given) is accepted are as follows:

"First. The said member is now living and of temperate habits and is now and has been, during the past twelve months, in continuous good health and free from all disease, infirmity, illness, indisposition or weakness, and has not during said period consulted or been prescribed for or attended by any physician for any cause whatever, otherwise said payment, and this receipt and said policy shall be null and void, and the sum paid herein shall be subject to the order of the within named person.

"Second. The receipt and acceptance of the within named sum by the company shall be not held to waive forfeiture or expiration of membership, or to reinstate membership, or to create any liability of the company under said policy except upon fulfillment of the first condition of this receipt.

"Third. The acceptance of the within sum after the same became due, shall not establish a precedent for acceptance of future payments to the company, nor shall any subsequent payment upon said policy impair, waive, alter or change any of the conditions of this receipt or of said policy, or of any agreements or conditions relating thereto."

There was evidence which it may be claimed tends to show that this red slip was never received by the insured. Thereafter, the February, April, June, August, and October, 1905, mortuary premiums matured, and they were duly paid by the insured. Receipts were given therefor, and in each one it was stated that the receipt was "subject to the terms and conditions indorsed hereon and of said policy contract, and to all agreements and conditions relating thereto," and on the back was indorsed:

"Terms and Conditions. The acceptance of the premium hereon shall not be held to waive forfeiture caused by nonpayment of any previous sum when due or otherwise."

In June, 1904, the insured was attended by a physician once for indigestion or some kind of colic, and in November or December, 1904, he was likewise attended four times for la grippe. On this latter occasion, he seems to have been confined to his house for about two weeks. This statement puts us in position to appreciate and to dispose of the assignments of error relating to the charge to the jury, and the refusal to give defendant's requests. The jury were told, in substance, that if said draft for $24.45 dated December 24, 1904, was mailed at Jackson on that date, or in time to have reached the defendant at its New York office by December 31, 1904, the policy was not forfeited, and plaintiff was entitled to recover, whether in fact the

draft reached defendant by or after that date. This portion of the charge is assigned as error. This assignment is not well taken. It is well settled that, notwithstanding a policy of insurance provides that payment of the premium shall be made at the insurer's home office by a time certain, if, after its issuance, the insurer requests or authorizes or acquiesces in the sending of the premiums by mail a deposit thereof in the mail in time to reach that office by the time it is due will save a forfeiture even though it does not in fact reach there until afterwards. Kenyon v. Knights Templar & M. Mut. Aid Association, 122 N. Y. 247, 25 N. E. 299; Primeau v. National Life Association, 144 N. Y. 716, 39 N. E. 858, affirming Primeau v. National Life Association, 77 Hun, 418, 28 N. Y. Supp. 794; McCluskey v. National Life Association, 77 Hun, 556, 28 N. Y. Supp. 931; Hollowell v. Virginia Life Insurance Co., 126 N. C. 398, 35 S. E. 616.

In the Primeau and McCluskey Cases it was held that if the premium is mailed within the time it is due, though not in time to reach the home office by that time, it will save a forfeiture. There, the insurer had requested that the premium be sent by mail, and because of this it was held that the receipt of the premium was at the insurer's risk. But the question does not depend on at whose risk the premium is so sent. In the Hollowell Case Judge Clark said:

"It will be observed that in the case in New York (Kenyon Case, 122 N. Y. 247, 25 N. E. 299) the premium was not received at all, but the court held that the company could not, after its course of dealings, forfeit the policy. By this it is not meant that if the money is lost in the mail, or if the drawee becomes insolvent before presentation of the check or draft, the insured is discharged from making good the loss on notice, but simply that it is so far a payment that it prevents a forfeiture."

That mailing the premium in such a case in time to reach the home office before it is due is sufficient may well be based on the ground that such is the reasonable interpretation to be put on the conduct of the insurer in requesting, authorizing, or acquiescing in its being so sent, and that the insured has a right to act upon it. It may be that this ground is sufficient to uphold a mailing before the time it is due, but not in time to reach the home office by that time. But we do not find it necessary to determine this question here. Here, by the instructions on the calls made, the insured was authorized to remit by mail, and by its course of dealing it acquiesced in the premiums being so sent. That said instructions stated that the remittance was at the sender's risk does not affect the matter. The thing at risk was not its reaching the home office before the expiration of the time in which it was due, but was its not reaching there at all. The case, therefore, of State v. Insurance Co., 106 Tenn. 283, 61 S. W. 75, cited in behalf of plaintiff, in which it was held that delivery of a letter or package containing several premiums on a life policy to a post office or commissioner within the state of Tennessee addressed to the company at a point outside of the state did not constitute delivery or payment to the insurance company within the state, and that such delivery and payment did not become complete and effective until its receipt by the company at its office, and that this money remained in the meantime at the risk of the sender, in no way affects the question we have here.

The jury were told further as follows:

"If you find from the proof that this assessment No. 137 was legally made, and that the insured, Mr. Solomon Tuchfeld, received notice of the assessment, but that he failed from some cause to make the remittance within the time contracted for in the policy, or that he bought this exchange and mailed his letter after the 1st of January and that it was not received by the company until the 16th of January, and when they did receive it they placed it as a credit upon the assessment, and that then they sent to the insured this notice on this red slip and that he received that notice—nothing else appearing that would work under the terms of the policy a forfeiture of the policy, and the plaintiff would not be entitled to recover. But if you find this last state of facts—that is, that this letter was not mailed until after the 1st of January, and that it reached New York some time after that date, and defendant placed it to the credit of this assessment against Mr. Solomon Tuchfeld, and then if you should find they mailed the insured this red notice, and you further find from this testimony that they continued to assess him as the assessment period rolled around four, five, six, or seven times, and each time they gave him notice of his assessment and notice of payment, and that he continued to pay each assessment within the time fixed by the contract, and they accepted it and placed it to the credit of his assessment, and they continued to do so up to the time of the death of Mr. Solomon Tuchfeld—then I instruct you that that would be such a waiver of the letter of the contract as would estop these defendants from now saying this policy lapsed and is now void."

This portion of the charge, in substance, was that if the draft was not deposited in the mail until after January 1st and was received January 16, 1905, was placed by the defendant as a credit upon the assessment, and defendant thereupon sent the insured the "red slip," then the policy was forfeited, and plaintiff was not entitled to recover, but that if, notwithstanding this, thereafter the defendant made other calls upon the insured before his death, and he paid them, then the forfeiture of the policy was waived, and plaintiff was entitled, to recover. It is true that in this latter contingency the jury were told simply that the forfeiture was waived, and it was not expressly said that plaintiff was entitled to recover. But this was implied. In the former contingency they were told in so many words, not only that the policy was forfeited, but that the plaintiff was not entitled to recover. In the latter contingency it was intended to be conveyed to the jury not only that forfeiture had been waived, but that the plaintiff was entitled to recover, and the jury could not have failed to so understand. Inasmuch as there was no dispute in the evidence that the defendant had, subsequent to the mailing of the red slip, made other calls on the insured, and he had paid them, this portion of the charge in effect amounted to a peremptory instruction to the jury to find for plaintiff.

One of the assignments of error relates to this portion of the charge. The question as to whether it is well taken should be considered in the light of several positions as to which there can be no doubt. One is that if, in fact, the insured failed to mail said draft until after December 31, 1904, the policy thereupon expired and became null and void, in accordance with its terms. Another is that, though the policy did thus become forfeited, yet if the defendant upon receipt of the draft had done nothing more than to apply it on the December call and acknowledge receipt thereof, such action on its part would have been a waiver of the forfeiture, and would have reinstated the policy. No authorities need be cited in support of these two positions. Still

another one is that as the defendant was not bound in such case to accept said draft, and waive the forfeiture, it had a right so to do on such terms as it might dictate, and if it so did on the terms named on the red slip a breach thereof was a defense to the action, nothing else appearing. This so clearly follows from the preceding positions that no authorities ought to be required to support it. Yet it will be helpful to take notice of some of them. In the following cases, to wit, French v. Mutual R. F. L. Association, 111 N. C. 391, 16 S. E. 427, 32 Am. St. Rep. 803, Teeter v. United Life Insurance Association, 159 N. Y. 411, 54 N. E. 72, McQuillan v. Mutual R. F. L. Association, 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. Rep. 986, the principle embodied in this position was presupposed. In each case there had been a forfeiture of the policy in suit by nonpayment of premium at the time stipulated, and in the French and Teeter Cases a conditional waiver thereof. In the French Case the insurer was the same as here. On payment of the back premium it gave the insured a receipt stating that the condition upon which it was accepted was that he was then and for 12 months past had been in continuous good health and free from all disease, infirmity, or weakness. This receipt was given January 30, 1891, and the insured died July 13, 1891. It was held that this condition meant no more than that if there had been such illness or impairment of health that the insured would not have been received, if he had been an original applicant for insurance, the reinstatement was void, and as the jury had found that there had been no such illness or impairment of health that the plaintiff was entitled to recover. In the Teeter Case the insurer advised the insured that before it could give him credit for the payment he would have to execute a health certificate, by which he certified that he was then in good health. This he did, and thereupon he was reinstated, and thereafter he continued to pay his premiums until his death some four years and eight months after the date of reinstatement. It was held that the plaintiff was entitled to recover notwithstanding the statement of said certificate was untrue, because of an incontestable clause in the policy, which, it was further held, began to run as to said statement from the date of reinstatement, and the limit of that clause had expired. In the McQuillan Case the insurer was the same as here. It was held there that the plaintiff was entitled to recover on the ground that there had been no conditional waiver. There, the insured had assigned the policy, and, after forfeiture, on receipt from the assignee of the back premium, the insurer sent the assignor a conditional receipt the same as here, retaining the premium. It was held that it should have been sent to the assignee. In the following cases, to wit, Unsell v. Hartford Life & Annuity Insurance Co. (C. C.) 32 Fed. 443, Ronald v. Mutual R. F. L. Association, 132 N. Y. 378, 30 N. E. 739, Bottomly v. Metropolitan Life Insurance Co., 170 Mass. 274, 49 N. E. 438, Ash v. Fidelity Mutual Life Association, 26 Tex. Civ. App. 501, 63 S. W. 944, Pacific Mutual Life Insurance Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, the principle so embodied was applied to the facts thereof. In the Unsell Case, the question was whether the insured had so often and under such circumstances received premiums, after they were due previous to the one in question

as to waive its nonpayment at maturity. Amongst the receipts given for the previous premiums were certain of them which were conditional on the insured being then alive and in good health. Judge Thayer, in charging the jury, said, speaking of such receipts:

"A receipt of that kind, even though it be for dues paid after they were due (and it purports to be for such dues), does not tend to show an absolute waiver by the company of its right of forfeiture, and these receipts were not admitted by the court on that theory. Receipts in this form only tend to show that the company would accept payments after due, and after a right of forfeiture had accrued to it, in the event that the member was alive and in good health."

The case was affirmed by the Supreme Court in 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496.

In the Ronald Case the insurer was the same as here. On payment of the back premium it gave the insured a receipt containing the statement that it was accepted on condition that the insured was then in as good health as when received. This was not true as he then had fatty degeneration of the heart, and died the next day. It was held that the plaintiff could not recover. In the Bottomly Case the policy had lapsed for nonpayment of the premium. The insurer made application for reinstatement in which certain declarations and warranties were made, and it was granted in accordance with and subject to said declarations and warranties. It appearing that one of them was not true, it was held that plaintiff could not recover. In the Ash Case the policy was issued in 1891. In August 1894 or 1895 the premium was not paid when due, and the policy was forfeited. In a renewal contract the insured stated that he had not had any sickness or ailment or received any medical treatment since the date of his original application. He had had pains in his stomach for two or three years, and in 1894 had pneumonia. It was held that plaintiff was not entitled to recover. Judge Fly said:

"After the forfeiture of the policy for such nonpayment, it would again be subject to forfeiture on account of false statements made by the insured to obtain a reinstatement."

In the Galbraith Case, the policy was issued January 1, 1902, and the insured died February 14, 1904. On January 1, 1903, he failed to pay the second annual premium when due. Thereafter, he applied for reinstatement of the policy and it was granted upon his furnishing a certificate containing a warranty of present good health. The warranty was false in that he was then suffering with consumption complicated with Bright's disease. It was held that the plaintiff could not recover. It was so held, notwithstanding the policy contained a two years incontestable clause—this, on the ground that on the reinstatement the two years began to run anew from the date thereof, and had not therefore expired at the time of death. These authorities are sufficient if any were needed, to make good this position.

A final position is that the acceptance by the plaintiff in error of the bimonthly premiums thereafter—i. e., in February, April, June, August, and October, 1905—maturing did not amount to a waiver of the conditions of the red slip. In the French Case, supra, it is quite likely the policy was a bimonthly premium one. If so, three premiums

had matured and been paid after the conditional waiver. And in the Teeter Case, supra, the policy ran four years and eight months after the conditional waiver. In none of the other cases, supra, does it appear that any premiums matured and were paid after the reinstatement of the policy, subject to the conditions stated. Upon the reinstatement of the policy here the plaintiff became liable thereunder the same as before, except that new conditions were imported into its liability, to wit, those contained in the red slip, and to continue that liability the insured was bound to pay, and the plaintiff in error was entitled to receive, the bimonthly premiums as they thereafter matured. As the payment of those premiums did not amount to a waiver of the original conditions it did not so affect the new conditions added at the reinstatement. It amounted no more to a waiver thereof than it would had not the old policy been reinstated, but a new one containing them had been issued in its stead. Besides, in each of the receipts given for the subsequent payments, it was stated that the receipt thereof was subject to the terms and conditions indorsed thereon and of said policy contract, "and to all agreements and conditions relating thereto." Of course, if, after the reinstatement, the plaintiff in error had become aware of the breach of the condition upon which it was made, and thereafter it called for and accepted any of said subsequent payments, a different question would arise. But we have no such case here, as it does not appear that the breach thereof, if such there was, became known to the plaintiff in error until after the death of the insured.

This brings us to the assignment of error now under consideration. The portion of the charge covered by it contains two branches. In the first branch thereof, it is said that two things worked a forfeiture of the policy and interfered with plaintiff's right to recover. One was the failure to mail the draft until after January 1st; and the other was defendant's placing this draft as a credit upon the insured's assessment and sending him the red slip. We find nothing in the evidence as to defendant's placing the assessment to the insured's credit. All that appears is that the draft was received by the defendant January 16, 1905, and on the next day it mailed the red slip to him. When the amount of the draft was placed to his credit does not appear. Undoubtedly, the failure to mail the draft until after January 1st worked a forfeiture of the policy, and cut off plaintiff's right to recover. But the placing of the draft to the insured's credit and the mailing of the red slip to him had no such effect. This had the effect of waiving conditionally the forfeiture caused by the failure to mail the draft in time. In so far, however, as there was error here, it was not prejudicial to the plaintiff in error.

The other branch of this portion of the charge contained what we have said in effect amounted to a peremptory instruction to find for plaintiff. It was that the acceptance by defendant of the subsequent payment of the bimonthly premium notwithstanding the mailing of the red slip estopped defendant from saying the policy had lapsed and was void. To a certain extent, the mailing of said red slip so estopped— using this word here in a loose sense—the defendant from so saying, i. e., except for breach of the conditions contained on the red slip. But, in view of the positions heretofore advanced, said subsequent pay-

ments did not estop defendant from so saying because of the breach of said conditions. The lower court seems to have thought that the case of Beatty v. Mutual R. F. L. Ass'n, 75 Fed. 65, 21 C. C. A. 227; same case, 93 Fed. 747, 35 C. C. A. 573—was an authority for this portion of the charge, and it is urgently insisted here that it is in point. We do not think that it is. The insurer there was the same as here. The policy contained a forfeiture clause for nonpayment of any premium when due. Calls 15 to 42 had been paid. On March 27, 1889, call 43 was made, and it was due May 1, 1889. Payment thereof was tendered on May 3, and the insurer refused to accept it except on condition that the insured furnish the usual health certificate. This he did not do. The sole question in the case was whether or not the insurer had waived a forfeiture of the policy for the delay as to call 43 by reason of previous course of dealing and of subsequently making call 44. The previous course of dealing relied on as working the estoppel was that the insurer had previously accepted payment of calls 16, 17, 20, 25, 26, and 42 after they were due. Conditional receipts were given for payment of calls 16, 17, and 25, and regular receipts for payment of calls 20, 26, and 42. It was held that it was a question for the jury as to whether the insurer had waived the forfeiture. There was no question in the case as to whether, if the insured had furnished the health certificate required for acceptance of call 43 after it was due, and the insurer had given a conditional receipt therefor, the insurer could not have defeated an action thereon for breach of such condition, even though subsequent thereto and up to the time of the insured's death it had made and received payment of calls for premiums as they matured, which is the question we have here. The question there was whether there had been a forfeiture of the policy by nonpayment of the premium when due. The question here is whether the insurer can rely on a breach of the condition on which it accepted payment of an overdue premium, thereby waiving the forfeiture caused by its nonpayment in time, as a defense to an action on the policy. In other words, by the acceptance of the premium after it was due, the insurer obtained a waiver of the forfeiture by reason of its nonpayment when due, and the question is whether the plaintiff can avail himself of this waiver without regard to the terms on which he obtained it, simply because defendant accepted payment of subsequently maturing premiums, when it had no choice as to their acceptance, and in the receipts given therefor, it was expressly provided that they were still in force. We think not, and that, therefore, this portion of the charge was erroneous.

It is to be noted that it is provided in the red slip that in case of breach of the first condition the sum paid should be subject to the order of the insured. There is nothing in the fact that by virtue of this provision the plaintiff may have been entitled to a return of all premiums then and thereafter paid on the policy if his right to recover thereon was defeated by such breach, and that same may not have been returned to him to affect the correctness of said portion of the charge. Goorberg v. Western Assurance Co., 150 Cal. 510, 89 Pac. 130, 10 L. R. A. (N. S.) 876.

Another portion of the charge duly excepted to, and assigned as error, embraces the same error as that first considered. Omitting a preliminary abstract statement it is in these words:

"If, therefore, you find from the evidence that, subsequent to the call 137, assessments were imposed on plaintiff's intestate on account of the policy sued on in this action, and notice of such assessments were sent to plaintiff's intestate, that would be treating the policy as in full force by the company at the date of sending assessments, and you will find that there was no forfeiture of the policy on account of the nonpayment of mortuary call No. 137, and the plaintiff would be entitled to recover, if thereafter and within the time allowed by the policy plaintiff's intestate paid the defendant, or its authorized agent, the amount of such subsequent assessments or calls."

Here, again, the jury are told that the making and payment of the subsequent calls entitled plaintiff to recover irrespective of the question whether there had been a forfeiture of the policy by nonpayment of call 137 when due; a conditional reinstatement thereof when said call was paid and accepted, and a breach of that condition, which was relied on as a defense to the action, and as to which there was evidence tending to support it. If said policy had been reinstated, even though conditionally, the insurer had a right to pay, and the insured was bound to accept payment of the subsequently maturing calls. The making and payment of such calls could not, therefore, amount to a waiver of such condition, particularly when it was expressly recognized in each receipt given for such subsequent payment as still in force.

We do not find it necessary to consider in detail the other portions of the charge assigned as error, except that portion relating to the penalty, which will be referred to further on, nor to any of the requests which were refused. It will prolong this opinion too much to do so. It is sufficient to say that we do not see that the court erred in any of its rulings involved therein.

The two requests asked by defendant covering its position as to nonliability for breach of the condition as to the insured's health and medical attention were not proper, because therein the jury were told absolutely that plaintiff could not recover if there had been a conditional waiver, and the condition had been breached. This was not the law. Though this may have been so, yet, if the draft was mailed in time, plaintiff was entitled to recover. As we view it, the law of the case on its merits was that, if the draft had been mailed in time, the plaintiff was entitled to recover, irrespective of any other question. Again, though it had not been mailed in time, yet if there was an absolute and not a conditional waiver of the forfeiture caused by the failure to mail the draft in time, then plaintiff was entitled to recover. And, further, if there was a conditional waiver the plaintiff still was entitled to recover unless there was a breach of the condition. If there was a conditional waiver of such forfeiture, the making and payment of the subsequent calls have no bearing on the case unless any of them were made or paid after knowledge of a breach of the condition came home to the defendant, of which there is no evidence in the record.

The final assignment of error is the instruction in relation to the penalty. No question is made as to its conforming to the statute except in one particular. The statute is in these words:

"That the several insurance companies of the state and foreign insurance companies and other corporations, firms or persons doing an insurance business in this state, in all cases where a loss occurs and they refuse to pay the same within 60 days after a demand shall have been made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy in addition to the loss and interest thereon, a sum not exceeding 25 per cent. on the liability for said loss; provided, that it shall be made to appear to the court and jury, trying the case, that the refusal to pay said loss was not in good faith and that such failure to pay inflicted additional expense."

The liability to pay the penalty depends on a refusal to pay after a demand. The instruction complained of did not put the question of demand to the jury. They were told that if defendant's refusal to pay was not in good faith, and caused additional expense to plaintiff, they might allow the penalty. A refusal may be said to imply a demand. But the matter should have been directly put. Back of this, however, there was no evidence of a demand before suit was brought. That a formal demand is essential in order to render the insurer liable to the penalty, notwithstanding its apparent futility, and the bringing of the suit itself is not such a demand, was held under a similar statute in the case of Northwestern Life Assur. Co. v. Sturdivant, 24 Tex. Civ. App. 331, 59 S. W. 61. This construction of said statute was adopted by the Supreme Court in the case of Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204. Other grounds are urged why the instruction should not have been given. It is claimed that it would be unconstitutional to apply the statute to the policy in suit. That policy was issued long before the enactment of the statute. To so apply the statute, it is claimed, would be repugnant to section 10, art. 1, of the United States Constitution, prohibiting a state from passing any law impairing the obligation of contracts. It is claimed, on the other hand, that the matter is affected by the consideration that after the enactment of the statute—that is, from April 18, 1901, until November 15, 1901—the defendant continued to do business in the state. Again, it is urged that the statute has no application to insurance companies on the assessment plan, and it was made to appear on the trial of the case that defendant did business on such plan. And, still further, it is urged that there was no evidence of want of good faith on defendant's part.

We do not find it necessary to pass on these other grounds. It is sufficient to say that the lack of evidence that a formal demand had been made requires that it be held that this assignment is well taken.

The judgment is reversed, and cause remanded for proceedings consistent herewith.