McQUILLAN, Respondent, vs. MUTUAL RESERVE FUND LIFE ASSOCIATION, Appellant.

| 112 | 665 |
|-----|-----|
| 114 | ²524 |
| 112 | 665 |
| 117 | ² 28 |

*November 8, 1901 — January 28, 1902.*

*Life insurance: Benefit certificate: Payment of assessment after default: Forfeiture: Waiver: Assignment to creditor: Notices, to whom given: Limiting liability to amount of debt: Effect of incontestable clause: Relief of assured as pauper: Debtor and creditor.*

1. If the holder of a policy of life insurance providing that it shall be forfeited for failure to make any payment due thereon to the insurance company at the time agreed upon, makes a payment after default, the mere retention of the money by the company, a receipt being delivered to the proper person indicating such retention to be upon condition of the assured being able to establish, satisfactorily, certain facts specified, does not waive the forfeiture.

2. Under the circumstances above indicated, retention of the money without bringing home to the attention of the proper person any condition affixed thereto, or the retention of the money for an unreasonable length of time after knowledge has been brought home to the company that the facts requisite to save the policy from forfeiture cannot be established, waives the forfeiture.

3. Where a policy of insurance has been assigned, by permission of the insurance company, to a creditor of the assured, under such circumstances as to vest in the assignee the whole beneficial interest in the policy and render it necessary for the assignee to make the payments necessary to preserve the policy, all notices required by the terms thereof to be given to the holder of the same should be given to such assignee.

4. If the assignee of a policy of insurance, holding the whole beneficial interest therein, allows it to lapse by failing to pay an instalment of money due thereon at the proper time and thereafter makes payment thereof, he will not be affected by any condition, affixed by the company to the retention of the money, not brought home to him.

5. An insurance company may, by contract, affix such conditions as it sees fit to the assignment of its policies.

6. A policy of life insurance having been assigned to a creditor of the assured by consent of the assurer — the policy providing that in such circumstances the whole beneficial interest therein shall vest in the assignee and that upon the death of the assured the liability of the company shall be limited to the amount due such assignee from the assured and payments made by the former to keep up the policy — and the assignee, after making proof of the death of the assured, having assigned the policy to the widow of the assured, who was the beneficiary named in the policy but consented to the first assignment, such widow's interest is limited to the amount due her assignor at the time of the death of her husband and the amount paid by such assignor to keep up the policy.

[Syllabus by MARSHALL, J.]

*On motion for rehearing:*

7. A provision in a policy of life insurance that "claims by any creditor as beneficiary or assignee shall not exceed the amount of the actual *bona fide* indebtedness " of the assured to him at the time of death, together with any payments made by such creditor on the policy, with interest, and that the policy "as to all amounts in excess thereof shall be null and void " — is applicable in the case of an assignment of the policy as collateral security.

8. The consent of the insurer to such an assignment and the giving of directions as to how it should be effected did not waive the provision above quoted.

9. A clause in a policy rendering it incontestable after five years, except for certain specified causes, did not alter the effect of the provision above quoted upon an assignment duly made to a creditor of the assured.

10. Where the policy was assigned to a city to secure payment of moneys theretofore paid by the city for the relief of the assured as a pauper, and to reimburse it for such sums as it might thereafter expend for the same purpose, the city became a creditor of the assured, within the meaning of the provision above quoted, although the relief of a pauper would not ordinarily create the relation of debtor and creditor.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Modified and affirmed.*

Action to recover on a benefit certificate. The certificate was issued to Hugh McQuillan, payable to his wife, *Rose McQuillan,* if living at the time of his death. It contained the following, among other provisions:

"If any of the payments stipulated in this contract shall not be paid on or before the day of the date as provided in this contract, at the home office of the association in the city of New York, or to a duly authorized collector of the association upon a receipt signed by its president, secretary, or treasurer, . . . this certificate or policy of insurance shall be null and void, and all payments made thereon shall be forfeited to the association."

" If any statement made in the application for this certificate or policy of insurance is in any respect untrue . . . this certificate or policy of insurance shall be null and void, and all payments made thereon shall be forfeited to the association."

"No assignment or transfer of this certificate or policy of insurance shall be valid until a duplicate or a certified copy thereof shall be delivered to the association at its home office, and the same approved by its secretary or assistant secretary, and any assignment or transfer, without delivery of the same or a certified copy thereof to the association and approval thereof by its secretary or assistant secretary, shall render this certificate or policy of insurance null and void. An insurable interest existing at the time of the assignment or transfer, must be shown by all claimants, at time of claim hereunder; and claims by any creditor as beneficiary or assignee shall not exceed the amount of the actual *bona fide* indebtedness of the member to him, existing at the time of said death, together with any payments made to the association under this certificate or policy of insurance by such creditor, with interest at six per cent. per annum, and this certificate or policy of insurance as to all amounts in excess thereof shall be null and void."

In July, 1898, the assured, being a public charge and unable to keep up the payments on his certificate, by consent

of his wife in writing and of the association duly given, assigned it to the city of Eau Claire to secure payment of the sum of $10.12 theretofore paid out of the public funds for his relief and to reimburse the city for such sums as it might thereafter expend for the same purpose and to keep up the insurance, with interest at six per cent. per annum. An assessment of $3.06 became due on August 31, 1898, after the assignment. The assessment was not paid for several days after it became due. Upon discovering the default the city clerk of the city of Eau Claire offered to pay the assessment to the Bank of Eau Claire, the collecting agent for the association. It refused to receive the money, whereupon the clerk sent a bank draft for the amount of the assessment, by letter, to the home office of the association, with a blank receipt to be signed by it and returned, absolutely accepting the money as and for said assessment. The association received and retained the money without communicating with the city, but claimed upon the trial to have sent a conditional receipt to the assured, which was to the effect that the money was received for the assessment of August 31, 1898, to be applied thereon if the assured was, at the date of the receipt, September 6, 1898, and had been during the year prior thereto, in good health and free from disease, infirmity, illness, indisposition, or weakness, and had not during that period consulted or been prescribed for by any physician for any cause whatever, otherwise the payment, receipt, and policy to be void. The assured was in poor health and under the doctor's care to the knowledge of the city when the money was sent, and had been in that condition for a period of about a year prior thereto. The conditional receipt, claimed by the association to have been sent to the assured, was in accordance with its by-laws.

The assured died on September 22, 1898. November 7, 1898, proofs of death were furnished to the association by the city on blanks furnished by the association. February

17, 1899, an agent and adjuster of the association visited the city of Eau Claire and obtained plaintiff's signature to proofs of death without expense to her, at the same time giving her encouragement that the insurance would be paid. The association made no attempt to return the money paid by the city as aforesaid, till March 9, 1899, when it tendered its bank check therefor, which was refused. The claim of the city against McQuillan, at his death, with interest to August 17, 1899, was $20.13, and on that day, in consideration of payment of said sum, the city assigned the certificate of insurance to plaintiff, who thereafter brought this action. The defendant, by its answer, insisted upon a total forfeiture of the certificate for failure to seasonably make payment of the assessment of August 31, 1898, and for a false statement, in the application for insurance, of the age of the insured; and further insisted upon a forfeiture of all claims in excess of the amount due the city of Eau Claire at the time of the death of the assured and interest thereon,. to secure which it held the policy.

The jury rendered a special verdict to the effect, among other things, that the age of the assured was truthfully stated in the application for insurance; that the agent of the association procured from plaintiff additional proofs of death on the representation that the insurance would be paid; that the assured, prior to his death, did not receive from defendant any receipt for the payment made on account of the assessment of August 31, 1898. Judgment was. rendered, upon the undisputed evidence and the verdict, in favor of plaintiff for $1,213.21, and the defendant appealed.

*C. T. Hickox*, for the appellant.

For the respondent there was a brief by *W. H. Frawley*, attorney, and *James Wickham*, of counsel, and oral argument by *Mr. Wickham*. They contended, *inter alia*, that. the assignment vested in the city of Eau Claire the entire legal title to the insurance, and authorized the city to col--

lect the entire amount of the policy. If the city collected more than the amount of its claim it stood in the position of a trustee for the benefit of the beneficiary. That was a matter entirely between the city and the beneficiary, in which the defendant was not interested. *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542; *Gilman v. Curtis,* 66 Cal. 116; *St. John v. Am. Mut. L. Ins. Co.* 13 N. Y. 31; *Foster v. Gile,* 50 Wis. 603–610; *Curtiss v. Ætna L. Ins. Co.* 90 Cal. 245; *Robinson v. Hurst,* 78 Md. 59; *New York L. Ins. Co. v. Flack,* 3 Md. 341, 56 Am. Dec. 742; *Wright v. Mut. B. L. Asso.* 118 N. Y. 237–244. After assignment of a policy of life insurance the assignor cannot affect the interests of the assignee either by making admissions that would be binding against him or by waiving his rights by acquiescence or express agreement. *Hathaway v. Orient Ins. Co.* 134 N. Y. 409; *Kingsley v. New England Mut. F. Ins. Co.* 8 Cush. 393; *Bullman v. North British & M. Ins. Co.* 159 Mass. 118; *Illinois F. Ins. Co. v. Stanton,* 57 Ill. 354; *New England F. & M. Ins. Co. v. Wetmore,* 32 Ill. 221; 2 Am. & Eng. Ency. of Law (2d ed.), 1088.

The following opinion was filed November 29, 1901:

MARSHALL, J. As we view this case, several reasons advanced for a reversal, and several reasons given in support of the judgment, need not be considered. The pleadings admit, or the evidence establishes beyond controversy, that payment of the assessment of August 31, 1898, was made by the city of Eau Claire, the owner of the policy, several days too late; that the money was retained by appellant several months with knowledge of all the facts, before its duty to refund the same, or be bound to consider mere time of payment thereof immaterial, was recognized; that no notice whatever that the money was conditionally received and retained was given to the owner of the policy; and that no valid tender back of the money was made to such owner or to

any one. The mere retention of the money for a reasonable length of time, for the purpose of ascertaining whether the facts warranted a reinstatement of the forfeited policy under the company's by-laws, and enabling the assured to comply with the conditions precedent to such reinstatement, did not waive the forfeiture caused by the late payment, if we give effect to the conditional receipt. *Rockwell v. Mut. L. Ins. Co.* 20 Wis. 335; *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421; *Ronald v. Mut. R. F. L. Asso.* 132 N. Y 378; *Lewis v. Phœnix M. L. Ins. Co.* 44 Conn. 72; *Crossman v. Mass. B. Asso.* 143 Mass. 435; *Unsell v. Hartford L. & A. Ins. Co.* 32 Fed. Rep. 443. That rule, however, did not militate against a waiver of the forfeiture occurring by appellant's retention of the money long after it ascertained the facts as to the ability of McQuillan to secure reinstatement of his membership under its by-laws. In *Miles v. Mut. R. F. L. Asso., supra,* the rule deduced from the authorities was that acceptance of an overdue assessment on condition that the assured is in good health does not waive a forfeiture caused by the delinquency if the member is not then in good health and the assurer offers, promptly, to return the money upon discovering that fact. In the absence of any provision of the contract or circumstance to effect a different result, the general rule applies, that the retention of money paid to an insurance company, for an instalment due upon one of its policies, with knowledge of facts rendering the policy void, ratifies and affirms it as a subsisting obligation. *Joliffe v. Madison Mut. Ins. Co.* 39 Wis. 111; *Erdmann v. Mut. Ins. Co.* 44 Wis. 376; *Underwood v. Iowa Legion of Honor,* 66 Iowa, 134; *Shea v. Mass. B. Asso.* 160 Mass. 289; *Gray v. Nat. B. Asso.* 111 Ind. 531. In this case appellant retained the money paid upon the policy after a forfeiture had occurred, without notifying the owner that any condition was affixed to such retention, notwithstanding a special request accompanied the money for

an immediate return of evidence indicating that it had been received and applied for the purposes for which it was sent. Doubtless the rule stated in *Shea v. Mass. B. Asso., supra,* cited to our attention by respondent's counsel, that the owner of the policy, where money is paid too late, is entitled to have notice brought home to him of any condition affixed to the retention thereof, is correct and should be applied to this case. Here, appellant, with full knowledge that the policy of insurance had ceased to be binding upon it if it saw fit to insist upon the full effect of the late payment of the assessment, not only retained the money and kept silent, so far as notifying the owner of the policy of its attitude, till the death of the assured, but continued in such attitude till such owner had been put to the trouble and expense of making and transmitting proofs of death, and for a long time thereafter. There can be no question but that, under such circumstances, an insurance company is bound by its conduct indicating a waiver of the forfeiture. The law is so well settled that forfeitures are not favored by courts, and that circumstances similar to those which characterized the conduct of appellant irrevocably indicate an intention on the part of the assurer to treat the insurance contract as subsisting, that no complaint can reasonably be made by appellant because its conduct is held to result that way. When the money for the assessment was received, appellant not only knew the policy of insurance was forfeited, but knew that the money came from the party that, under the terms of the insurance contract, was the owner of the entire beneficial interest therein, and that such party desired the money to be received and retained unconditionally or not at all, and to have evidence of appellant's position in that regard by due course of the mails. Nevertheless it kept the money without making any attempt to reach the owner of the certificate with information that a condition was affixed to such retention, and its attitude, so far as regards

such owner, was not changed until the latter had been put to the trouble and expense of making proofs of death, and did not change at all by any legitimate offer to return the money.    That such conduct constitutes a waiver of the default in making payment in time, is too clear for discussion.

Appellant, from the beginning to the end of this controversy, seems to have assumed that the city of Eau Claire, the owner of the policy, was bound by the receipt claimed to have been sent to McQuillan.    If that were so, it would not avail appellant, as we have seen, because of its failure to return the money seasonably after receiving knowledge of facts rendering compliance with the conditions named in the receipt impossible.    While appellant insists that McQuillan and his wife parted absolutely with the policy by the assignment, except his interest in having it extinguish his liability to the city, that situation seems to have been entirely overlooked so far as it bears on appellant's transactions with him in respect to the receipt.    When the assignment of the policy was perfected, the city became substituted, for most purposes, for McQuillan and for his wife as well.    All communications thereafter, by the association, affecting the validity of the insurance contract, were due to the new party, and it was not affected by any made to McQuillan any more than it would have been by communications made to a mere stranger to the contract.    We cannot see any excuse for appellant's neglect in that regard.    It not only knew the city was the sole and unconditional owner of the policy, but that, under the conditions of its ownership, it was expected to keep up the payments thereon, was, to all intents and purposes, except the mere circumstance necessary to the maturity of the contract of insurance, substituted for McQuillan and his wife.    *Bowen v. Nat. L. Asso.* 63 Conn. 460.    From this it will be seen that the conditional receipt is immaterial to appellant's liability. The case stands the same, as regards total forfeiture of the

insurance contract, as if McQuillan had not assigned it, and had made the payment in question accompanied by a request for immediate notification as to whether a forfeiture would be insisted upon, and the money had been retained without any condition being brought home to him, as in *Shea v. Mass. B. Asso.* 160 Mass. 289, which, the court there said, was fatal to the claim of forfeiture.

What has been said does not militate against appellant's insisting upon the right to recover being limited to the amount due the city of Eau Claire from McQuillan when he died, with interest. As before indicated, the McQuillans irrevocably parted with all interest in the policy by the assignment. The condition in that regard may be considered harsh, but courts must enforce contracts as they find them. If a person sees fit to make an insurance contract so that an assignment thereof to one of his creditors will have the effect of limiting all liability thereon to the amount due such creditor from him at the time of his death, there is no law to prevent it, and he and those who come after him must abide thereby. There can be no question but that an insurance company may, by contract, place such restraints upon the assignment of its insurance policies as it sees fit, not inconsistent with its own laws or some statute. Niblack, Ben. Soc. & Acc. Ins. §§ 168, 169. We cannot escape the conclusion that, by the terms of the contract before us, respondent must suffer, as a penalty for the assignment of the policy, the loss of all interest therein. That is as plainly stipulated in the policy as language can make it. The effect thereof, and of the assignment, was to substitute a new contract for the policy as originally written, with like conditions except that the liability of the assurer was limited solely to the city of Eau Claire and to the amount due the city from McQuillan at the time of his death, including payments by it to keep up the policy and interest thereon, not exceeding in all the amount payable under the contract in the absence of the

assignment. The amount of the city's claim, including payments made to keep the policy alive, and interest up to August 11, 1899, was $20.13. The right of action therefor passed to the plaintiff by the assignment made to her by the city before the commencement of this suit. Such right constitutes plaintiff's only claim against appellant.

Some questions are discussed in appellant's brief to which we have not alluded, but so far as they could in any event affect the result of the appeal they have been considered, but are not deemed of sufficient significance to justify speaking of them specifically.

*By the Court.*— The judgment of the circuit court is reduced to $20.13 and interest thereon from August 11, 1899 and costs as taxed, and is affirmed as modified, costs in this court to go in favor of the appellant.

BARDEEN, J., took no part.

On a motion for a rehearing counsel for the respondent contended, *inter alia*, that the provision of the policy, that in case of an assignment to a creditor all of the policy in excess of the amount due the insured should be forfeited, does not apply to an assignment as collateral security. Joyce, Insurance, §§ 888, 889, 914, 919, 2336; 19 Am. & Eng. Ency. of Law (2d ed.), 87; *Curtiss v. Ætna L. Ins. Co.* 90 Cal. 245; *Elsberg v. Sewards*, 66 Hun, 28; *Hitchcock v. N. W. Ins. Co.* 26 N. Y. 68; *Griffey v. New York C. Ins. Co.* 100 N. Y. 417; 16 Am. & Eng. Ency. of Law (2d ed.), 931. That provision as a ground of forfeiture was eliminated by the incontestable clause in the policy. *Mareck v. Mut. R. F. L. Asso.* 62 Minn. 39; *Mutual R. F. L. Asso. v. Payne* (Tex. Civ. App.), 32 S. W. Rep. 1063; *Goodwin v. Provident S. L. Ass. Asso.* 97 Iowa, 226; *Sun L. Ins. Co. v. Taylor*, 22 Ky. L. Rep. 37; *Wright v. Mut. B. L. Asso.* 118 N. Y. 237; *Kline v. Nat. B. Asso.* 111 Ind. 462; *Fitch v. American P. L. Ins. Co.* 59 N. Y. 557; *Patterson v. Nat. Prem. Mut. L. Asso.* 100 Wis. 118.

The following opinion was filed January 28, 1902:

MARSHALL, J. Counsel for respondent suggest five reasons why a reargument of this case should be granted, each of which will be briefly considered.

The first proposition is that the clause in the policy upon which the decision was based refers to an absolute assignment, not to an assignment as collateral security as in this case. To that several authorities are cited. None of them, in our judgment, solves or attempts to solve the question here involved, or treats the same, except *Elsberg v. Sewards*, 66 Hun, 28. There the policy contained a clause like the one before us. The meaning thereof was not a subject for decision, nor was it determined, the company having paid the money into court, leaving conflicting claimants to have their rights judicially determined. Wholly outside the questions for decision, however, the court said that it was not entirely clear that the company could take advantage of the forfeiture clause as against the assured, for the evident purpose thereof was to protect the corporation against creditors speculating upon the life of a person by obtaining something beyond what was actually due from him; that if, under such a clause, an assignment is made, absolute in form, the provision will protect the company from liability in excess of the *bona fide* claim of the creditor. The court suggested that such meaning must be the only effect of the provision; that it cannot be held to apply to a mere assignment as security, because of the hardship which would otherwise result. We do not deem those suggestions of any considerable importance, first, because not made in the course of the decision of any question involved in the cause; and second, because they are entirely inconsistent with the plain words of the policy. Words of a contract cannot be legitimately bent out of their ordinary meaning merely because otherwise a hard contract would result. If that were

not so, freedom of contract would be at an end, and courts would be looked to to revise all contracts and change them so as to conform to judicial notions of equity regardless of the intention of the parties. Puffendorf's rule, that ' where words express clearly the sense and intent, courts must give effect thereto regardless of the consequences,' is one that has no exception. Courts have no right, even to avoid an absurd result as regards the effect of a contract, to ascribe a meaning to words not within their reasonable scope. For the purpose of saving a party from the consequences of a hard bargain, courts cannot do more than what " can be done by a perfectly fair and entirely rational construction of the language actually used. To do more than this would be to sacrifice to the apparent right of one party in one case that steadfast adherence to law and principle, which constitutes the only protection and defense of all rights, and all parties." 2 Parsons, Cont. (8th ed.), 506. By the words of the policy, "any creditor as assignee," it will be seen that reference is made to a person holding the policy at the time of the death of the assured as creditor. In that case the policy is made valid as to the amount due the holder as creditor, and, " as to all amounts in excess thereof," void. How can a meaning be reasonably ascribed to such language that will not include the idea that it deals with creditors existing at the time of the death of the assured, holding policies assigned to and held by them as creditors, not sold to them outright? The language repels the idea that persons holding policies as purchasers only are referred to.

The next proposition is that the forfeiture clause was waived by the agreement and conduct of the parties. The agreement and conduct referred to are the company's assent to the assignment and directions as to how it should be effected. We are unable to see in that any indication of a waiver. All the indications are in perfect harmony with the preservation of the insurance contract as it was written.

It prohibited any assignment of the policy except by compliance with certain rules. It required assent by the company and stipulated that in case of an assignment of the policy to a creditor, and the presentation by him of a claim thereon at its maturity, the contract should be void except as to the amount of such claim. The consent given in this case, and conduct of the appellant by way of advising how to effect the transfer, gave no other indication than that the assignment could be made in accordance with the terms of the contract.

The third proposition is that the forfeiture clause was eliminated by a provision rendering the policy incontestable after being in force for five years, for any cause except nonpayment of dues, etc. Counsel favor us with a very plausible argument in support of that proposition, citing numerous cases. It would not be profitable to review them. It is sufficient to say that they are all cases involving the effect of violations of conditions of insurance contracts where there is an incontestable clause. No case is cited, and we venture to say none can be, holding that an agreement between the assured and the insurer, subsequent to the issuance of the policy and in strict accordance therewith, rendering a policy partly or wholly void, is affected by the incontestable clause. The clause in that regard, in the policy before us, is the one usually found in insurance contracts. The effect thereof is that no violation of the conditions of the policy, except in the cases specified, shall constitute a defense thereto, at the maturity of the contract. There was no violation of the terms of the insurance contract in this case, either by act of omission or commission. There was merely an assignment of the policy by consent of the company according to its terms. By necessary inference, as a condition of the assignment, it included the clause limiting the validity of the policy to the amount due the creditor at the time of the maturity of the contract, in case at such time such creditor should hold it. At every

stage in the consideration of this case we have fully appreciated the hardship of the construction of the policy we have been compelled to adopt, but no other can be adopted, as it seems, without doing violence to the language of the contract. While courts are to look with as much disfavor as they reasonably can upon all clauses in insurance contracts which may be considered from two aspects, one which will defeat and one which will sustain a cause of action upon it, and for the full amount called for thereby at the maturity of the policy, they must stop at the boundaries of reason the same in case of an insurance contract as in any other.

The fourth proposition is that the defense that the policy was not a valid claim except as to the amount due the assignee at the time of the death of the assured, and the payments made by the assignee to keep up the policy, cannot be considered, because it was not pleaded or insisted upon on the trial, nor any error in respect thereto, committed by the trial court, preserved for consideration by proper exceptions. The record does not bear out that contention. On the contrary the defense was fully pleaded in subdivision 8 of the answer, and there was a specific exception to the order of the court for judgment on the special verdict for the full amount of the policy. There is ample evidence that the defense was deemed by appellant's counsel one of the important features of the answer and subjects for consideration on the trial, and for exception to the result reached by the trial court.

The last proposition is that the city of Eau Claire was not a creditor within the meaning of the policy because it did not possess any legitimate enforceable claim against McQuillan for money advanced for his benefit from the poor fund. That proposition would be true as applied to the ordinary circumstance of supporting a pauper out of the poor fund of a municipality. But such was not this case. There was a contract between McQuillan and the city whereby

he agreed to become a debtor of the city for the money advanced by it for his benefit. That contract was executed. Whether it would have been valid as an executory contract is not material to the case. Having been executed, it was binding on McQuillan, making him a debtor the same as if he had obtained the money from a private party. That a debtor and creditor relation was agreed upon between McQuillan and the city is stated by the learned counsel in his argument in respect to the second proposition, where it is urged upon the attention of this court that in the arrangement between the insurance company, the city, and McQuillan, an assignment of the policy to the city, as collateral security for an indebtedness, was contemplated.

We say again that we have fully appreciated the unfortunate outcome of this litigation from the standpoint of respondent, and have given the case the most careful study, applying all the established rules for the construction of insurance contracts for the protection of policy holders, without being able to discover how a different result could be reached than the one embodied in our judgment, without grossly violating the liberty of contracting. There is some reason for saying that such violations have sometimes taken place in some jurisdictions in respect to insurance contracts. They have probably occurred through mistaken notions of the extent to which courts can go merely to effectuate judicial notions of equity. They do not strictly observe the established principle that courts cannot make contracts for parties by bending the meaning of words out of their reasonable scope to avoid inequitable results,— cannot do that even to effect the intention of the parties. The best that can be done is to carry out such intention so far as it can be discovered and found expressed, reasonably, by the words they saw fit to use therefor.

*By the Court.*—The motion for rehearing is denied.

Bardeen, J., took no part.