## BALLARD v. BENEFICIAL LIFE INS. CO.

No. 5010.   Decided May 3, 1933.   (21 P. [2d] 847.)

2

*Ashby D. Boyle,* of Salt Lake City, for appellant.

*Ball, Musser & Mitchell,* of Salt Lake City, for respondent.

STRAUP, Chief Justice.

The plaintiff, as the beneficiary, brought this action to recover on an insurance policy issued by the defendant on the life of her husband, Willard Russel Ballard. The home office and general place of business of the company was at Salt Lake City, Utah. The residence of the insured was at

Logan, Utah. The policy was issued December 15, 1925, in the sum of $5,000. The annual premiums amounted to $295.35, payable annually, semiannually, or quarterly. The insured died April 13, 1929. The defendant resisted payment on the ground that the policy had lapsed and was forfeited because of nonpayment of premiums. The plaintiff urged that the defendant had waived the making of such payments within the time prescribed by the policy, contended that it had treated the policy as in full force and effect until the death of the insured, and thus was estopped to assert that the policy was not of binding effect. The case was tried to the court, who found the issues in favor of the plaintiff and entered judgment accordingly.

So far as material, the court found that the annual premium to be paid on the policy was $295.35; that if paid semiannually the payments were to be made in the sum of $153.58, and if paid quarterly, in the sum of $78.26; that the insured was given the right and option to pay the premiums with a 30-day grace; that the insured pursuant to the policy paid "said premium quarterly on the 15th day of December, the 15th day of March, the 15th day of June, and the 15th day of September of each year." The court further found:

"3. That while said insurance policy was in full force and effect and in good standing, said insured died at Logan City, Utah, on or about the 13th day of April, 1929, and thereupon his defenant became obligated under said insurance contract to pay the plaintiff said $5,000.00.

"4. That on or about the 28th day of November, 1928, the said insured executed a policy loan agreement with the defendant (a copy of which was attached to the complaint and reference made thereto by the findings), whereby said insured borrowed from said company $405.00 and left with said company as security for the payment of said loan said insurance policy.

"5. That under the provisions of said insurance contract said indebtedness of $405.00 is to be deducted from said $5,000.00; that the insured was given thirty (30) days, and until April 15, 1929, to pay the premium due on said life insurance policy due March 15, 1929. That the amount of said premium amounted to $80.91, all of which premium

and the interest on said loan the insured paid to the defendant company on or about April 1, 1929, except the sum of $10.43, and that there is now due from the defendant to the plaintiff the sum of $5,000.00, less the amount of said loan, $405.00, less the unpaid amount of the premium on April 15, 1929, amounting to $10.43 aforesaid, leaving a balance owing by the defendant to the plaintiff of $4,584.57, plus interest thereon from the 13th day of April, 1929, until paid."

Judgment was rendered accordingly, from which the defendant has prosecuted this appeal. No finding was made as to the payment of premium due December 15, 1928. A finding is made that the premium due March 15, 1929, was paid. The findings as to the payment of premiums as well as the finding or conclusion that the policy was in full force and effect and in good standing at the death of the insured are challenged on the ground of insufficiency of the evidence and that they are contrary to the evidence. The principal question presented for review involves the finding that the policy was in force an effect. The affirmative is asserted by the plaintiff, the negative by the defendant. Dependent upon that question is the further question of waiver and of an estoppel. If there was neither, there was no existing policy at the death of the insured.

On November 28, 1928, all prior premiums up to that time had been paid in full, except $96.15 unpaid on the first year premium note. On November 28th the insured executed a policy loan agreement for the entire cash surrender value of the policy amounting to $405. From the amount of the loan the sum of $96.15 together with interest amounting to $1.14 on the loan from November 28th to December 15, 1928, the date of the next premium payment, was deducted, and the remainder of the loan amounting to $307.71 paid to the insured in cash. That, unless further premiums were paid, or the loan paid as by the terms of the loan agreement provided, exhausted the entire value of the policy. The loan agreement signed by the insured acknowledged the receipt of $405 in cash as of November 28, 1928, and as a loan on the policy. By its terms he agreed to pay interest on the

loan at 6 per cent per annum payable in advance and pledged the policy as security for the repayment of the loan and interest, and agreed that if any premium on the policy was not paid when due, the policy was to be foreclosed to satisfy the loan.

By the terms of the policy it, among other things, was stipulated that:

"In the event of default in premium payments, unless the cash value has been duly paid, it is agreed that this policy may be reinstated at any time upon evidence of (1) insurability satisfactory to the Company, (2) and the payment of all overdue premiums, (3) and the payment or reinstatement of any other indebtedness to the Company upon said policy, with interest at the rate of not exceeding six per cent per annum."

The policy further provided a period of 30 days' grace for the payment of premiums without interest, during which time the policy remained in full force and effect. The first premium after the loan was due December 15, 1928. About thirty days prior thereto the insured was given the usual notice in writing notifying him of such payment, stating the amount to be paid, and that "unless payment is made as above, your policy will become null and void, except as to any provisions otherwise provided therein." About ten days after the accrual of the December 15th premium payment, the defendant again by letter (referred to in the record as Exhibit 3) notified the insured that recently a notice of payment of premium was sent him, that it evidently escaped his attention, as "our records show no payments received," and informed him that the policy provided "a grace period of *Thirty-One Days without interest*," during which time or until thirty-one days after December 15th "the policy will continue in full force and effect." In such letter or notice it further was stated:

"Surely you intend continuing your protection. Life is uncertain. Why not send the remittance Now and avoid the dangers of delay? Don't put it off."

The number of the policy and the amount of premium due December 15th, the amount of the policy loan, and the interest due thereon were stated in both such notices.

No reply by the insured having been made to such notices and no remittance made by him, the defendant about January 4, 1929, sent him a further notice (which in the record is referred to as Exhibit 4) wherein the insured was again notified that:

"The grace period provided by your policy expires in a few days. We are therefore anxious to know that the matter has been brought to your attention that prompt payment may be made and your protection continued. If your policy calls for the payment of the premium annually, and it is inconvenient at this time to pay the entire amount we will gladly accept either a semi-annual or quarterly premium. You will find the amount specified upon the front of your policy. When the grace period expires, we of course will be compelled to cancel your protection *except as provided under the terms of your policy.* We feel confident that your remittance will be made promptly."

The grace period expired January 15, 1929. The premium was not paid and no communication or response whatever made by the insured. Several days thereafter, on January 17, 1929, and after the grace period had expired, the company again wrote the insured (referred to in the record as Exhibit 5) as follows:

"We are anxious to know whether or not we can be of service to you. Reference to our records show that your Life Insurance Premium still remains unpaid.

"Not knowing why you failed to pay this premium, we are unable to advise you.

"We believe, however, that if you will write us, stating frankly what your reasons are, we might be of assistance to you. This information will be appreciated, as often we are able to make suggestions and offer assistance to policyholders, which makes possible the continuance of their insurance.

"You realize, of course, that the value of the insurance is as great and the protection as necessary now as at any time and probably even more so, as each year adds to your age and increases the need of insurance.

"*We hope to receive your answer as promptly as possible in order that we can make you a proposition.*" (Italics added.)

No reply or response whatever having been received to that, the company, on March 20, 1929, more than sixty days after Exhibit 5 was sent the insured and admittedly received by him, wrote him what is termed a surrender or cancellation of the policy (referred to in the record as Exhibit 7), that:

"You have not responded to our letters calling your attention to your due and unpaid instalment.

"Your policy has therefore lapsed and become void.

"Reinstatement of this valuable Policy Contract is a privilege assured you by its terms. This may be effected now or at any time in the future *by paying back instalments with interest, arranging for the settlement of any and all indebtedness accrued on the policy, if any, and by furnishing evidence of insurability satisfactory* to the company." (Italics added.)

No reply or response whatever was made to that communication. Fifteen or sixteen days thereafter and on April 5, 1929, the insured was taken to a hospital at Logan. We are not advised what the illness or affliction was. He remained there until he died eight days thereafter, or on April 13. On April 10 or 11, 1929, the defendant received a check on a bank at Logan filled out by typewriting, in the sum of $163.08, payable to the defendant and personally signed by the insured. The check was dated March 30, 1929. The company when it received it, being without knowledge that the insured was ill or was in the hospital, indorsed and deposited the check at the bank where it did business at Salt Lake City, and through the Clearing House the check was honored and paid by the Logan bank on which it was drawn. Inclosed with the check and received at the same time was a typewritten letter also dated March 30, personally signed by the insured and addressed to the company, in which he stated:

"Enclosed find my check for $163.08 in payment on my insurance policy No. 6528 due December 15th with interest, also the total premium on instalments due on March 15th with interest for one month. The reason for this delay is due to my absence away from home. Please send premium receipts covering these items."

No receipts were sent and no evidence adduced that the insured had been absent. Notwithstanding, he, prior thereto, by Exhibit 4 had been notified that if the premium was not paid within the grace period the policy would be canceled, and by Exhibit 7 that the policy for nonpayment of premium "had lapsed and was void" and could be revived only by having it reinstated, to do which it was requisite that the insured not only pay all back instalments and indebtedness on the policy, but also that he furnish evidence of insurability, yet neither by his letter inclosing the check nor otherwise was there any effort made or any intention indicated to comply with such condition or that he was able to do so.

April 13 being Saturday, the afternoon of that day and the next two days being holidays, the office of the defendant was closed until April 16. On that day the defendant, not knowing the insured was dead or that he had been in the hospital or had been ill, wrote a letter addressed to the insured (referred to in the record as Exhibit C) that:

"We are in receipt of your remittance of $163.08 which you have sent to pay two quarterly premiums on your policy, and interest on your loan.

"The semi-annual premium on your policy is $153.58, the semi-annual double indemnity $5.20, interest on your loan for six months $12.15, and premium interest due on account of delay in payment, $2.85, making a total of $173.78 necessary to complete a semi-annual payment on your policy, which leaves your present remittance $10.70 short. We trust you will send us this additional amount by return mail.

"Also, as the policy had already lapsed for non-payment of premium before your remittance was received, it will be necessary for you to complete the enclosed health form and return it to us for approval by our medical board. Kindly answer all questions on this form carefully before returning it, and be sure to have your signature witnessed.

"Upon receipt of the health form properly completed, and your additional remittance of $10.70, we will be pleased to reinstate your policy to June 15, 1929, and mail you official receipt covering the semi-annual premium payment, provided of course that your health

is found to be still satisfactory. We trust you will give this matter your prompt attention."

A blank copy of "health form" and application for reinstatement was inclosed with such letter. By such form and application for reinstatement, had he been alive and had it been filled out and signed by the insured and returned to the company, he, by its terms, was required to warrant and agree that the answers therein made by him as to the condition of his helath, etc., were true, and were to be taken as the basis of a reinstatement of his policy and that *the policy was not to be reinstated until the application was approved by the proper officers of the company at its home office and all unpaid premiums and interest fully paid and by furnishing evidence of insurability satisfactory to the company.*

Eight or nine days after writing the last letter, Exhibit C, the defendant, in the meantime having learned of the death of the insured, on April 25 by its check in the sum of $163.08, payable to the beneficiary, the plaintiff herein, refunded the remittance received by it April 10 or 11, accompanied with a statement that the remittance could not be applied on the policy for the reason that it theretofore had lapsed. The check was received, and uncashed was retained by the plaintiff and was held by her at the time of the trial.

The foregoing, concerning which there is no substantial, if any, conflict in the evidence, reflects the statutes and situation bearing upon the question of whether the policy at the death of the insured was or was not in force and effect. It is the contention of the respondent that by the communications sent the insured and by cashing the check on April 11 and retaining the remittance until April 25, and especially because of Exhibit 5, the letter written two days after the grace period of the December 15 premium payment had expired, and of Exhibit C, the letter written three days after the death of the insured, the company waived payment of premiums, especially the December 15 payment, within

the time stipulated in the policy, and that the company was thus estopped to assert that the policy was not in force and effect at the death of the insured.

It is also contended by the plaintiff that there was not sufficient evidence to show that Exhibit 7, the letter written March 20, 1929, was sent or received by the insured. We may first dispose of that. Evidence was given by the defendant that the letter or notice evidence by Exhibit 7 was, on March 20, mailed in due course of business. Before the exhibit was offered in evidence, counsel for the respondent was asked to produce the original. He replied, "We haven't that." When the exhibit was finally offered in evidence, the objection made thereto was, "It is incompetent, immaterial and irrelevant, because it shows it is just a self-serving statement." The exhibit was admitted in evidence subject to the objection. The record does not disclose any further ruling with respect to it nor, other than the statement of counsel, any evidence that the original was not received by the insured. No cross or any assignment of error is made with respect to the ruling admitting the exhibit in evidence. The ruling is thus not properly before us for review. However, we think sufficient evidence was adduced to admit the exhibit in evidence, especially as against the objection made to its admission. The case will thus be considered with the exhibit in evidence.

The elementary principles of law applicable to the case are not seriously controverted. Nor is there any substantial conflict or discord in judicial opinions or by the adjudicated cases as to such principles. What conflicts or discord there may be arise out of the application of such principles to particular acts, conduct, or transactions of the given case. That compliance with provisions of an insurance policy may be waived, and that one party as against the other because of acts and conduct may be estopped from asserting a forfeiture in the same manner that waivers or estoppels may be asserted with respect to provisions of other contracts, is well recognized by judicial authority.

Whether the particular acts or conduct in the given case constitute a waiver or an estoppel, the authorities are not in entire harmony. Let it be conceded all are not reconcilable, and yet in most of them where conflicts seemingly arise, the discord is more apparent than real.

The principle or doctrine applicable to the case is, as we think, well stated in 3 Joyce on the Law of Insurance (2d Ed.) 2513, § 1356, as follows:

"The doctrine of estoppel is applied to some act, declaration, or omission of a party to prevent the same from operating as a fraud upon one who has been induced to act in reliance thereon; as where one has thereby induced another to change his conduct or alter his condition. The party seeking to avail himself of an estoppel must have been misled, to his injury or prejudice, by the words, conduct, or omission of the other party. If he does not alter his condition, or if both parties are equally cognizant of the existing facts, so that he is not prejudiced by conforming to the course of action on which the claim to an estoppel is based, there is no estoppel. If an insurance company or its authorized agent, by its habits of business, or by its acts or declarations, or by the custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures," etc.

### So, too, in 32 C. J. 1341, § 615, that:

"A waiver of the right to assert a forfeiture or breach of a condition as to a policy of insurance need not be express, but the company may be precluded from avoiding its liability by its acts, conduct, or declarations after knowledge of the breach or ground of forfeiture, tending to show that it will not be taken advantage of and recognizing the continuing existence of the policy, inducing a corresponding belief upon the part of insured, although not necessarily creating a technical estoppel; and, obviously where the elements of a technical estoppel are present, the company is precluded from taking advantage of a for-

feiture or breach. On the other hand, the company cannot be held to have waived the stipulations in the policy by inducing insured to act or to refrain from acting to his detriment where at all times it advises insured that it intends to rely upon its legal rights, or where the acts of the parties recognize the necessity of an express waiver by the company and are directed toward procuring it.

"A forfeiture of the policy for nonpayment of a premium or assessment or of a note given therefor may be waived by conduct upon the part of the company inconsistent with the purpose to insist thereon, and this is true as well in the case of a provision for forfeiture or suspension in a policy issued by a mutual company. As forfeitures are not favored in the law, courts are not slow in seizing hold of any circumstances which indicate an agreement or election on the part of the company to waive a strict compliance with the contract, but, in order that there may be a waiver, there must be some statement or conduct by the company reasonably tending to establish it. The issuance of a receipt containing an erroneous recital of the period for which the premium was paid, does not constitute a waiver where insured was not misled thereby."

Also, in Cooley's Briefs on Insurance, vol. 5 (2d Ed.) p. 4407, where he says that as a special development of the principles discussed by him in preceding subdivisions, "is the rule that where there has been a default in the payment of a premium or an assessment justifying a forfeiture of the contract, such forfeiture is waived if, with knowledge of all the facts, the insurer, either before or after the death of the insured, unconditionally accepts and retains the specific premium or assessment for which the insured was delinquent"; on page 4413, that "a waiver of default cannot be predicated on the acceptance of past-due premiums after the death of the insured, if the insurer is ignorant of the fact of death"; on page 4424, that "it may be said that as a general rule the acceptance of a past-due premium on the condition that the insured is in good health, or that he furnish a certificate of good health, is not such an acceptance as will waive the forfeiture, such condition not being complied with"; on page 4355, that "a waiver as to a prior forfeiture will not arise, where a life or accident insurer accepts premiums without knowledge at the time of insured's

death, or serious illness, or serious injury"; and on page 4366, that "a waiver of a default in the payment of premiums cannot be based on a mere expression of willingness to reinstate the policy on easy terms," and that "a letter informing the insured of his right to reinstatement, and offering to reinstate on compliance with the conditions on which such right depends, is not a waiver, the conditions not being complied with," but "if the offer to reinstate is followed by a proper application, which is approved and granted, the company is then estopped to assert the forfeiture."

These general principles are not seriously disputed. What the respondent asserts is that the case in accordance therewith shows a waiver or an estoppel. To support that, the respondent chiefly relies on the cases of *Loftis* v. *Pacific Mut. Life Ins. Co.*, 38 Utah 532, 114 P. 134, where it was held that an insurer may waive prompt payment of premiums though payment is of the essence of the contract of insurance and may continue to treat the policy in force after rights thereunder have lapsed for nonpayment, and that the insurer by demanding and receiving pastdue and future installments of the premium could continue the policy in force; *Ellerbeck* v. *Continental Cas. Co.*, 63 Utah 530, 227 P. 805, that where the insured permitted an accident policy to lapse by nonpayment of premiums, the mere sending of statements by the insurer on the first of each month for two months after payment was due was not such a recognition of the existence of the policy and a waiver of payment as to continue it in force an indefinite time after the date of sending the last statement, that so long as the policy was not canceled the insured could make annual payments to reinstate the policy, and whether under the particular facts as disclosed in that case the extending of credit to the insured in payment of premiums would constitute a waiver, was for the jury; *Graham* v. *Security Mut. Life Ins. Co.*, 72 N. J. Law, 298, 62 A. 681, 683, that an insurance company may waive any condition of a policy inserted therein for its benefit, that forfeitures are not favored in the law, and

that it is always open on behalf of the insured to show a waiver of the conditions or a course of conduct on the part of the insurer from which it might justly and reasonably be inferred that a forfeiture should not be executed; *Underwood* v. *Sec. Life & Annuity Co.*, 108 Tex. 381, 194 S. W. 585, 587, that failure to pay a premium will avoid the policy and constitute a forfeiture without the necessity of a formal declaration thereof by the insurer, unless it waived the forfeiture, that where the insured on the due date gave a note for the premium, failure to pay the note when due was equivalent to failure to pay the premium and worked a forfeiture; *Roberts* v. *Amer. Nat. Assur. Co.* (Mo. App.) 220 S. W. 996, that a note accepted by a life insurance company in lieu of cash premiums, payable in instalments, continued the insurance in force until the due date of the note, modified the provisions of the policy forfeiting it for nonpayment of the premium instalments, and did not entitle the company to forfeit the policy until the due date of the last instalment of the note, that, after default in payment of a previous instalment of a premium note, the company demanded and the insured furnished an application for reinstatement, was not a binding construction by the parties that the policy could be forfeited for nonpayment of subsequent instalments and where the insured *sent a check for less than the amount due on his premium notes with the request that his insurance be reduced* and the check retained by the company without forfeiting the policy for failure to pay instalments, and the company not returning the check until after the death of the insured, it waived the right to forfeit the policy for the default, and by returning the check and claiming a forfeiture without knowledge of the insured's death which occurred five days before, did not affect the rights of the parties which had become fixed by the death, the company having acknowledged the check for less than the amount due and *treated the insurance as being in force after the default relied on* and indicated no contrary intention until after the insured's death; *Muckler* v. *Guarantee*

*Fund Life Ass'n,* 50 S. D. 140, 208 N. W. 787, 789, that a policy of life insurance providing for reinstatement after default in payment of premiums on proof of good health, etc., automatically was revived, *if such facts are certified in an application for reinstatement and in fact exist,* and that the insurer may reject the application for reinstatement of a lapsed policy after the death of the insured, if it would have been justified in rejecting the application or requiring further proof before reinstatement of the policy at the time the application was executed, and that *a lapsed life insurance policy is not reinstated until the insured fully complies with the conditions specified therefor; Equitable Life Assur. Soc.* v. *King,* 178 Ark. 293, 10 S. W. (2d) 891, and *Mettner* v. *Northwestern Nat. Life Ins. Co.,* 127 Iowa 205, 103 N. W. 112, which are to the effect that where a policy provided for reinstatement by the insured making application therefor, the company had no right to impose conditions not embraced in the policy for applications for reinstatement; *Equitable Life Assur. Soc.* v. *Brewer,* 225 Ky. 472, 9 S. W. (2d) 206, 207, that when payment of premium was tendered after the period of grace had expired, the insurer need not accept it, but when accepted *it must bring home to the insured any conditions it desires to impose,* as the insurer cannot accept money of the insured, retain and use it, and at the same time deny payment was made and repudiate liability under the policy, that the insurer should wait to accept money until conditions are communicated to the insured and complied with by him, that a receipt of payment for past-due premium unaccompanied by a health certificate required by the insurer for reinstatement constituted an unconditional tender of premium until conditions were assented to by the insured, and that where payment of premium was tendered unconditionally by the insured on a policy that had lapsed for nonpayment of premium, the insurer accepting payment of premium without inquiry as to insured's health would not defeat a liability on the policy, even though it were shown the insured was seriously sick

at the time of the tender; *Noem* v. *Equitable Life Ins. Co.,* 37 S. D. 176, 157 N. W. 308, that a provision in a policy that failure to pay premiums when due shall cause it to lapse may be waived by the company, that a letter, reminding an insured of his nonpayment of a premium, which amounts to only an expression of willingness to reinstate a forfeited policy upon compliance with conditions, does not constitute a waiver of default in payment, but if it indicates an intention to treat the policy as being in force, it constitutes a waiver, and a letter in such case reminding an insured of the payment of a past-due premium, although asking for a personal health certificate, constitutes a waiver of such payment; *Mull* v. *United States Fidelity & Guar. Co.,* 35 Idaho 393, 206 P. 1048, that an insurance company having knowledge of facts entitling it to treat a policy as no longer in force and thereafter demands and receives a premium on the policy, it is estopped from declaring a forfeiture; *Majestic Life Assur. Co.* v. *Tuttle,* 58 Ind. App. 98, 107 N. E. 22, that an insurer, knowing that a default has occurred in the payment of premiums which would authorize a forfeiture, enters into such negotiations with the insured as to indicate an intention to treat the contract as in force, the insurer's right to claim a forfeiture for such default is lost; *Hoyle* v. *Grange Life Assur. Ass'n,* 214 Mich. 603, 183 N. W. 50, that where the agent of the company, upon receiving payment of a premium after the policy had lapsed for non-payment of premium, *stated that a health certificate would be unnecessary as a condition of reinstatement,* the question of waiver was one of fact for the jury; *Andrus* v. *Fidelity Mut. Life Ins. Ass'n,* 168 Mo. 151, 67 S. W. 582, that if the insurance company did not wish the receipt of a premium to have the effect of reinstating the policy or of preventing a forfeiture, the company should refuse to receive the payment until the medical director acted favorably on the certificate, but which holding in such particular was modified if not repudiated by the later case of *Willis* v. *New York Life Ins. Co.* (Mo. Sup.) 281 S. W. 407; *McDonald* v. *Equi-*

*table Life Assur. Soc.*, 185 Iowa 1008, 169 N. W. 352, where the agent of the company before the grace period had expired sought to collect the premium and because of the absence of the insured informed his wife that the matter could wait until the insured returned, and the insured, three days after the grace period had expired, forwarded his check in payment of the premium which was received by the company, it, in view of the representation, was held estopped to declare a forfeiture.

Space does not permit a review as to the facts of the foregoing cases and upon which conclusions of waiver or of an estoppel were reached. As to most of them there will be found a state of facts materially different from those in hand. Reference, however, may be made to the rule of law laid down in some of them. In the Graham Case the court approvingly quoted from the case of *Hartford Life & Annuity Ins. Co.* v. *Unsell*, 143 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496, that:

" 'It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer, which gave him a just and reasonable ground to infer that a forfeiture would not be exacted, and the fact that defendant, without objection, had previously received from the insured monthly dues after the date on which, by the terms of the contract, they were payable, was properly left to the jury to infer waiver,' and 'that a waiver may arise by express language or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result.' "

In the Underwood Case the court stated:

"There is no statement in the letter that the forfeiture has occurred, and that it will be enforced unless the premium, with 5 per cent interest, shall be paid as provided in the contract. There is no insistence that the insured avail himself of his privilege to avoid the forfeiture. There is no statement that the insurance company is standing upon the forfeiture, or will do so. There is the statement that the insurance company is particularly desirous of having the insured to continue his insurance with the company. Now, what was the intention of the insurance company with reference to a waiver of the forfeiture when it wrote this letter? In determining this question we think it was the province of the court, in passing upon the weight of the evidence, to

take into consideration the past course of the insurance company with reference to the two previous forfeitures which had occurred, but which it had plainly waived. We think it was the privilege of the court, sitting as a jury, to pass upon the facts to discover the intention of the insurance company, to take into account the fact that the insurance company had waived the two previous forfeitures which had occurred for failure to pay the two preceding matured premiums, and to conclude from this past course of the company, together with the terms of the letter of July 11, 1907, that the intention of the insurance company was to do as it had been doing, that is, to waive the forfeiture which accurred upon the failure of the insured to pay the June 30th premium."

### In the Brewer Case it was said:

"The ultimate question involved is whether a premium payment, tendered after expiration of the grace period and retained by the insurance company on conditions, is binding on the company, when the conditions annexed to the acceptance are not communicated to the assured, or assented to by him, either expressly or impliedly. The provision of the contract regarding reinstatement of a lapsed policy, even if notice thereof be chargeable to the insured, did not contain the conditions, but merely provided that, if the policy should lapse for nonpayment of premium, it could be reinstated upon production of evidence of insurability satisfactory to the society and the payment of all overdue premiums. When the payment of the premium was tendered after the grace period had expired, the company was not required to accept it; but, when the company did accept it, it was incumbent on it to bring home to the insured any conditions it desired to impose. The company could not take the money of the assured as a payment of the premium, retain and use it, and at the same time deny that a payment was made."

### In the Muckler Case the court said:

"If the company would have been justified in rejecting the application, or requiring further proof before reinstating the policy, at the time the application was executed, it may do so now, although the death of insured has prevented his complying therewith. Until insured has fully complied with the contract on his part, there is no reinstatement, and the policy remains lapsed or dormant."

At the threshold we here find a condition where the insured on November 28, 1928, seventeen days before the next

premium date, drew in cash the full value of his policy. He was duly notified of the December 15 premium payment. The case in hand is not one where extensions of payment of prior premiums had been granted or past-due payments unconditionally accepted as shown by some of the cited cases, or where such a course of conduct had been acquiesced in. Ten days after the due date of the December 15 premium, the company promptly notified the insured that the premium had not been paid and that he had under the policy a thirty days' grace period to pay the premium and that during such period his policy would continue in full force and effect. He was admonished to send the remittance at once and avoid dangers of delay. By that letter the insured, in effect, was told that unless the premium was paid his policy would not be in force longer than the grace period. That, too, was the plain provision of the policy. There was not anything in that letter to lead the insured to believe that without such premium payment his policy would be in force after the grace period had expired.

The company, receiving no response to such communication, ten or eleven days before the grace period expired, again wrote the insured (Exhibit 4) and again admonished him that the grace period would expire in a few days and that "when the grace period expires we, of course, will be obliged to cancel your protection, except as provided under the terms of the policy," which was on application for reinstatement and by furnishing evidence of insurability satisfactory to the company, and payment of all overdue premiums and of all other indebtedness. There is not anything contained in that letter which led or could lead the insured to believe that unless he paid the premium within the grace period his policy would be continued in force. To the conrary, he was admonished that unless the premium was paid the policy would be cancelled. No other inference was deducible from such letter. The insured again paid no attention to that communication and made no response thereto. The days of grace having passed and the premium remain-

ing unpaid, the company, two days thereafter, whote the insured, Exhibit 5 (upon which the respondent chiefly relies as a waiver of the payment of the premium within the grace period), in which the company reminded the insured that the premium was unpaid, inquired if it could be of service to him, not knowing why the insured failed to pay the premium "we are unable to advise you," suggested that if he wrote the company stating frankly his reasons for not paying the premium it might be of assistance to him, and hoped "to receive your *answer as promptly as possible in order that we can make you a proposition.*" When the insured received that communication he by prior communications knew the policy had lapsed. He also knew that from the policy itself. When he received the communication, Exhibit 5, it is hard to believe that, without taking any action or doing anything himself, he thought or understood his policy indefinitely was kept or was intended to be kept in force. The communication does not reasonably convey any such meaning. What the company stated was that if the insured wrote promptly stating the reasons why he had not paid the premium it could make him a proposition. Unless he did that and a proposition made by the company, he was not, particularly in view of the prior communication, Exhibit 4, justified in assuming that his policy had not lapsed or that it could or would indefinitely be kept in force. Moreover, after the insured received Exhibit 5, he made no response thereto, paid no attention whatever to it, expressed no desire to make an explanation why his premium remained unpaid, indicated no desire or willingness to have the policy reinstated, or to receive any further service from the company, and by his silence in effect treated the whole matter as a closed book. No other conclusion may reasonably be deduced from his conduct. And so, more than sixty days after the insured received Exhibit 5, and the company, receiving no response, no word whatever from him in reply thereto, on March 20 and after the premium of March 15 was due, wrote the insured the letter (Exhibit 7) informing

him that the policy had "lapsed and became void," and advised him in effect that the only privilege or right open to him was a reinstatement of the policy "by paying back installments with interest, arranging for a settlement of any and all indebtedness accrued on the policy, if any, and by furnishing evidence of insurability satisfactory to the company."

From all this it is inconceivable that the insured understood or was led to believe that the policy was still alive or that it could be reinstated without paying back installments and all indebtedness accrued on the policy and by furnishing evidence of insurability, when on March 30, or more probably after he was taken to the hospital, he wrote or caused to be written the letter inclosing his check for $163.08, but which, with several mail trains each day from Salt Lake to Logan, a distance of 90 miles, was not received by the company until April 10 or 11, five or six days after the insured had been taken to the hospital. That the company on March 20 had the undoubted right to declare, as it did, that the policy had lapsed and was no longer in force, except on reinstatement of it as by the terms of the policy provided and as plainly indicated by the company in its letter of Exhibit 7, is not open to serious question. That the insured so understood the matter, that he reasonably was required to so understand it, that when he sent his check, whether on March 30 or thereafter, he well knew that this policy prior thereto had not only lapsed but also *had been declared forfeited* and no longer, without reinstatement, was of any binding effect, is likewise not open to serious question. And let it not be overlooked that on the record, whether on March 30, five or six days before, or at any time after, the insured was taken to the hospital, the conclusion is inevitable that the condition of health of the insured was such that satisfactory evidence of insurability could not be furnished by him and that none was furnished or attempted to be furnished. What his condition then was, was more peculiarly within the knowledge of the plaintiff than the

defendant. So far as disclosed by the record no claim was made by her that the condition within such period or at any time prior thereto was such that evidence of insurability could be furnished, and no evidence whatever was adduced to show what such condition was.

Reliance by the plaintiff is also put on Exhibit C, written by the defendant three days after the death of the insured. That the letter was written without knowledge of the insured's illness or death' is not disputed. Nor is it claimed that the plaintiff did anything in reliance on the letter or because of it was induced to do or omit to do anything by reason of it. What is claimed is that the letter shows, as is contended, an unconditional payment of the premium and an unconditional acceptance of the remittance by the defendant and evidenced a declared intention of the defendant to treat the policy as being in full force and effect, notwithstanding the policy theretofore had lapsed and had been declared forfeited. We think the letter not open to the contention. The most that may be said of it is that the remittance was accepted upon the condition that the balance of $10.70 of the unpaid premium be remitted by "return mail" and upon the insured furnishing evidence of insurability. By the letter it was expressly stated that, "as the policy had already lapsed for nonpayment of premium before your remittance was received, it will be necessary for you to complete the enclosed health form and return it to us for approval by our Medical Board," and, "upon receipt of the health form properly completed and your additional remittance of $10.70, we will be pleased to reinstate your policy to June 15, 1929, and mail you official receipt covering the semi-annual premium, provided, of course, that your helath is found to be still satisfactory." A conditional acceptance of the remittance could not well be stated in more certain terms. By the exhibit it was clearly manifested that the policy had lapsed, and that it could be reinstated only on the stated conditions, and that until such conditions were complied with the policy had no binding effect. To contend,

as does the respondent, that "Exhibit C was a recognition that the policy was still in force and that the retention and use of the money sent by the insured was, under the circumstances, an unconditional acceptance of the premium," and that the check was cashed without knowledge that the insured was in the hospital or seriously ill and not in condition to furnish evidence of insurability, the acceptance constituted an unconditional acceptance, is to disregard plain and unambiguous language of the exhibit.

In that connection it further is argued that if the company did not desire or intend unconditionally to accept the check as payment or to accept it on condition that the insured was in good health, the company was required either to return the check uncashed, or, if cashed, to hold the proceeds in suspense until the stated conditions were complied with. The company offered to prove that where checks of policyholders were received after the policy had lapsed, it was the custom and habit of the company to hold such checks in suspense without entering credit therefor on the books of the company until the requirements for reinstatement had been met, and what in such particular was done with the check in question and the proceeds thereof, which offer, on the objection of the respondent that the proffered testimony was "incompetent, irrelevant and immaterial," was rejected by the court, which ruling is also assigned as error. The appellant, as stated at the time of the offer, claimed the right to adduce such proof as bearing on the question of whether such acceptance was conditional or unconditional and as being relevant to the claimed waiver of nonpayment of the premium. While it was material to show a custom or course of dealing between the company and the insured but not a general custom with others not known or made known to the insured, still it was material and relevant to show what the company did with the check and the proceeds thereof and how they were applied, whether held merely in suspense or otherwise. The respondent contends it was not competent to show such fact

by books of the company, citing *Baxter* v. *Metropolitan Life Ins. Co.*, 318 Ill. 369, 149 N. E. 243. Perhaps not. Still, the offer was not predicated merely on proof by books or records of the company. Had such a book or record been offered as direct and primary evidence of the fact or facts therein recited or recorded, a different question might well have arisen. But no such book or record was offered. How the company handled the check and the proceeds thereof was material. That could be shown by any one having knowledge of the fact. When proof of that was attempted to be made by incompetent evidence, it then was time enough to object to the offer. However, the offer with respect to the custom and habit of the company, as broad as it was and not restricted to a course of dealing with the insured and without notice or knowledge of the insured as to customary dealings with others, the offer in such particular was immaterial and objectionable; and since a portion of the offer was immaterial and no attempt made to segregate the material from the immaterial, no error may be predicated on the court's ruling rejecting the whole offer. Further, the matter was not of controlling importance, for that the company by Exhibit C, five or six days after the receipt of the check and without knowledge of the death of the insured or that he had been ill, sufficiently indicated that the check was received on condition that the balance of the unpaid premium be promptly remitted and the health form properly completed and returned to the company for approval by its medical board, and until then, the policy could not be reinstated. And in that connection must also be considered Exhibit 7, whereby a forfeiture of the policy had theretofore been declared and the insured notified that, to revive the policy, it had to be reinstated and what was necessary for him to do to effect a reinstatement.

In view of all this, when the cases cited by the respondent are considered in connection with the facts as there disclosed, we think most or nearly all of them are either inapplicable to the case in hand or otherwise do not support

the respondent's contention. Rulings made in cases of waivers or estoppels, of course, are based upon and must be considered in view of the particular facts of each case, which, as we think, are here materially different. And when the cases cited by the appellant are considered, we think it clear that no waiver or estoppel was shown and that the plaintiff, upon the facts as disclosed by the record, was not entitled to prevail. In support of such conclusion may be cited, among others, the following cases: *Mutual Reserve Fund Life Ass'n* v. *Tuchfeld* (Tenn.) 159 F. 833, 86 C. C. A. 657; *Gould* v. *Equitable Life Assur. Soc.*, 231 N. Y. 208, 131 N. E. 892; *Ronald* v. *Mut. Reserve Fund Life Ass'n*, 132 N. Y. 378, 30 N. E. 739; *Clifton* v. *Mut. Life Ins. Co.*, 168 N. C. 499, 84 S. E. 817; *Nelson* v. *Mut. Life Ins. Co.*, 58 Mont. 153, 190 P. 927; *Crook* v. *New York Life Ins. Co.*, 112 Md. 268, 75 A. 388; *Bank of Commerce* v. *New York Life Ins. Co.*, 125 Ga. 552, 54 S. E. 643; *New York Life Ins. Co.* v. *Scott*, 23 Tex. Civ. App. 541, 57 S. W. 677; *Nielsen* v. *Provident Sav. Life Assur. Soc.*, 6 Cal. Unrep. Cas. 804, 66 P. 663; *McQuillan* v. *Mut. Reserve Fund Life Ass'n*, 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. Rep. 986; *Globe Mut. Life Ins. Co.* v. *Wolff*, 95 U. S. 326, 333, 24 L. Ed. 387; and *Equitable Life Assur. Soc.* v. *Pettid* (Ariz.) 11 P. (2d) 833.

While the facts in such cited cases are not in all respects similar to those of the case in hand, yet we think they are as favorable if not more so to the plaintiff than those under consideration. That is especially true in the recent case of *Equitable Life Assur. Soc.* v. *Pettid,* supra, where the correspondence and the circumstances thereof are quite similar to the case in hand and where, inter alia, it was held that an insured, permitting a life policy to lapse, is under affirmative duty of furnishing evidence of insurability satisfactory to the insurer to obtain reinstatement; and if, at the time of the retention of money tendered in payment of past-due premium, it appears that the insurer still intended to require performance of other conditions annexed to rein-

statement of the lapsed policy, there is no waiver; and though it be shown that the insured was in good health at the time of death, that would not entitle the beneficiary to recover as if the policy had been reinstated, if the insured had failed to furnish a certificate of good health required by the insurer for reinstatement of the policy.

As heretofore observed, let it be conceded that the adjudicated cases are not in entire harmony. Hence, in following the one or the other line of cases and in considering the conclusion to be reached as to whether on the stated facts a waiver or an estoppel either in law or in fact resulted, we should be guided and influenced by those thought to be the better founded on conceded basic and fundamenetal principles of law applicable to the subject under consideration. That principle, as we believe, and particularly here applicable, is well stated by Mr. Justice Field in the case of *Globe Mut. Life Ins. Co.* v. *Wolff,* supra, that:

"Not only should the company have been informed of the forfeiture before it could be held by its action to have waived it, but it should also have been informed of the condition of the health of the insured at the time the premium was tendered, upon the payment of which the waiver is claimed. The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts: of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it. The holder of the policy cannot be permitted to conceal from the company an important fact, like that of the insured being in extremis, and then to claim a waiver of the forfeiture created by the act which brought the insured to that condition. To permit such concealment, and yet to give to the action of the company the same effect as though no concealment were made, would tend to sanction a fraud on the part of the policyholder, instead of protecting him against the commission of one by the company."

Thus, in accordance with what has been said and with the views expressed by us, that on the record no waiver or estoppel was shown, it follows that the judgment of the court below must be reversed and the case remanded for a new trial. Such is the order. Costs to the appellant.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.