## WOOD v. BENEFICIAL LIFE INS. CO.

No. 5421.   Decided November 19, 1934.   (37 P. [2d] 544.)

*J. W. Cherry,* of St. George, *R. J. Shay,* of Cedar City, and *Willard Hanson* and *L. R. Rogers,* both of Salt Lake City, for appellant.

*Bagley, Judd & Ray* and *Ashby D. Boyle,* all of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

Plaintiff is the surviving widow of John Andrew Wood, deceased. Prior to his death, Mr. Wood carried a life insurance policy with the defendant company. Plaintiff, as the beneficiary named in the policy, brought this action to recover thereon. The only issue raised by the pleadings was as to whether or not the policy was in force at the time of the death of Mr. Wood. A trial was had to the court sitting with a jury. At the conclusion of the evidence, defendant moved the court to direct a verdict of no cause of action upon the grounds: (1) That the undisputed evidence showed that the policy sued upon lapsed prior to the death of Mr. Wood because of his failure to pay the premium provided for in the policy; (2) that there was neither plead-

ing nor proof that defendant had waived its right to the payment of the premium as provided for in the policy. The motion was granted. Pursuant to the court's instruction, the jury returned a verdict of no cause of action. Plaintiff appeals.

The only error assigned is the court's order directing the jury to find a verdict for the defendant. There is no substantial conflict in the evidence. The following facts are established by the evidence: Under date of April 3, 1931, the defendant issued a life insurance policy in the sum of $1,500 on the life of Mr. Wood. The policy contained, among others, the following provisions:

"All premiums under this Policy are payable in advance either at the Home Office or to any authorized agent * * * and may be paid either annually, semi-annually, or quarterly, according to the rates stated on the fourth page hereof. Any premiums so paid shall not maintain this Policy in force beyond the date when the next premium is payable, except as provided herein * * *

"A grace of one month (not less than thirty days) without interest, will be granted for the payment of every premium after the first, during which time this Policy shall remain in full force and effect; * * *

"In the event of default in premium payments, unless the cash value has been duly paid, it is agreed that this Policy may be reinstated at any time upon evidence of insurability satisfactory to the Company, and the payment of all overdue premiums and the payment or reinstatement of any other indebtedness to the Company upon said Policy, with interest at the rate of not exceeding six per cent per annum."

The amounts of premium payable on the policy were, if paid annually, $50.22; if semi-annually, $26.12; and, if quarterly, $13.31. When the policy was issued, the first annual premium was paid. On March 3, 1932, defendant mailed a notice to the insured informing him that the premium on his policy would be due on April 3, 1932. The notice so mailed also contained this language:

"If premium is paid after thirty days from the due date, no interest charge will be made for overdue time and the Company as-

sumes no liability under the policy except as provided therein until official receipt is issued by the Company and signed by the President * * * Unless premium is paid as above, your policy will become null and void, except as to any provisions otherwise provided therein."

On or about April 3, 1932, another notice of similar import was mailed by the company to the insured. On or about April 23, 1932, defendant again mailed a notice to the insured, wherein it was stated that:

"Probably the notices sent you have gone astray—or have been overlooked, our records showing no payment. The grace period provided by your policy expires in a few days. We are therefore anxious to know that the matter has been brought to your attention that prompt payment may be made and your protection continued * * *

"When the grace period expires, we of course will be compelled to cancel your protection except as provided under the terms of your policy. We feel confident that your remittance will be made promptly."

On May 3, 1932, defendant wrote and mailed to the insured a letter reading as follows:

"Dear Policyholder: We are anxious to know whether or not we can be of service to you. Reference to our records shows that your Life Insurance premium still remains unpaid.

"Not knowing why you failed to pay this premium, we are unable to advise you.

"We believe, however, that if you will write us, stating frankly what your reasons are we might be of assistance to you. This information will be appreciated as often we are able to make suggestions and offer assistance to policyholders, which makes possible the continuance of their insurance.

"You realize, of course, that the value of the insurance is as great and the protection as necessary now as at any time and probably even more so, as each year adds to your age and increases the need of insurance.

"We hope to receive your answer as promptly as possible in order that we can make you a proposition. Please reply on the back of this letter."

Early in June Mr. Wood was taken sick. He was unable to perform any work after June 8th. On June 10th he sum-

soned his physician, who called daily thereafter until June 19th, when Mr. Wood died. At the request of the insured, his brother on June 12th wrote on the reverse side of a letter which the company mailed to the insured under date of May 3d the following:

"I have been out of employment since last November. I am sending 10.00 to apply on my past due premium and will try to pay $10.00 monthly as I have promis of a job, to start soon. Please let me know if this is satisfactory and oblige.

"Yours truly,

"[Signed] J. A. Wood,

"Hurricane, Utah."

A check for $10 signed by Ether Wood and made payable to defendant company was inclosed with the communication. The letter and check were received by defendant company at its office in Salt Lake City, Utah, on June 15th at 8:48 a. m. On June 20th, the day after the death of Mr. Wood, an agent of the defendant company called at the residence of the deceased and asked for and received the policy upon which this action is founded. The check was deposited by the defendant to its account, and was carried on the books of the company in a suspense account. Under date of June 22d the defendant wrote the insured a letter addressed to him at Hurricane, Utah. The letter reads as follows:

"We acknowledge the receipt of check for $10.00, which has been sent in as part payment of the premium which fell due April 3, 1932 on your policy.

"Since the days of grace have expired on this policy, the same is out of force at this time. Before we can reinstate it, therefore, it will be necessary for you to fill out and sign the enclosed reinstatement blank, having your signature witnessed and return to this office for the approval of our Medical Board.

"However, if it will be more convenient for you to pay this premium on the quarterly basis, kindly forward an additional remittance of $4.11, which includes 80c for double indeminity, together with the

above health statement. We will then be pleased to give this matter our prompt attention."

On June 27th defendant mailed its check for $10 to the insured. On the reverse side of the check was written the following. "Refund of Suspense Item Pol. No. 114453 Lapsed." The check was not cashed. Under date of June 29th plaintiff signed and acknowledged a written statement entitled, "Proofs of Death. Claimants' Statement." The statement was received in evidence. The following questions and answers, among others, appear on the statement so signed and acknowledged by plaintiff:

"Q. When did deceased first complain of, or give other indications of his last illness? A. Date June 1—1932.

"Q. When did deceased first consult a physician for his last illness? A. Date June 10—1932.

"Q. On what date did deceased last attend to his usual work? A. Date Did some work up to June 8—1932."

The physician who attended Mr. Wood during his last sickness also signed and acknowledged under date of June 29, 1932, a written statement entitled, "Proofs of Death. Physician's Statement." That statement was received in evidence. It contains, among others, the following questions and answers:

"Q. What was the immediate cause of death? A. Myocarditis with passive congestion of liver. Hemorrhagic nephritis.

"Q. How long, in your opinion, did deceased suffer from this disease or impairment? A. Probably 4 to 5 months.

"Q. What were the contributory causes of death? Give as nearly as you can by dates, the duration of each. A. Hemorrhagic nephritis. Duration indefinite but suspect it developed from attack of influenza in January, 1932. Definitely known to me from June 10th to June 19th, 1932."

The statements so signed by plaintiff and the physician were mailed to the company.

Evidence was offered on behalf of the defendant which tended to show that because of its volume of business it

often required from a week to ten days to answer correspondence and attend to business that came through the mails. Other correspondence touching the matter in hand was had between plaintiff and defendant after the death of Mr. Wood, but such correspondence does not aid in the solution of the question which divides the parties to this litigation.

It was substantially upon the foregoing evidence that the court below instructed the jury to return a verdict in favor of the defendant. It is urged on behalf of the plaintiff that the cause should have been submitted. Defendant contends to the contrary.

The parties have cited numerous cases which they claim support their respective contentions. It is not necessary to review the cases cited from other jurisdictions because the question here presented has been discussed at length and determined by this court in the case of *Ballard* v. *Beneficial Life Insurance Company* (Utah) 21 P. (2d) 847. The facts in the instant case are so similar to the facts in the Ballard Case, supra, that there is no escape from the conclusion that the same results must be reached in this case as were reached in the former case.

The judgment of the lower court is affirmed; costs to respondent.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.